No. 25-___

IN THE

# UNITED STATES COURT OF APPEALS
### FOR THE FEDERAL CIRCUIT

IN RE LENOVO GROUP LIMITED,
*Petitioner*

On Petition for a Writ of Mandamus to the
United States District Court for the Eastern District of Texas,
Case No. 2:23-cv-00449
Chief Judge Rodney Gilstrap

**PETITION FOR A WRIT OF MANDAMUS**

JACOB SCHROEDER
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
3300 HILLVIEW AVENUE
PALO ALTO, CA 94304-1203
(650) 849-6600

LI ZHANG
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
TWO SEAPORT LANE
BOSTON, MA 02210-2001
(617) 646-1600

*Counsel for Petitioner,*
    *Lenovo Group Limited*

December 11, 2024

# CERTIFICATE OF INTEREST

**Case Number:** _____

**Short Case Caption:** _In re Lenovo Group Limited_____

**Filing Party/Entity:** _Lenovo Group Limited_____

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date:  _December 11, 2024_____     Signature:   _/s/ Jacob A. Schroeder_____

Name:     _Jacob A. Schroeder_____

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| ☐ None/Not Applicable | ☒ None/Not Applicable | ☐ None/Not Applicable |
| Lenovo Group Limited | | Legend Holdings Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐     None/Not Applicable          ☐     Additional pages attached

| | | |
|---|---|---|
| Steven David Moore Kilpatrick Townsend & Stockton, LLP | Aliza George Carrano Willkie Farr and Gallagher LLP | Christopher Samuel Leah Kilpatrick Townsend & Stockton LLP |
| Dane Sowers Willkie Farr & Gallagher LLP | Indranil Mukerji Covington & Burling LLP | Joshua H Lee Kilpatrick Townsend & Stockton LLP |
| Kasey E. Koballa Kilpatrick Townsend & Stockton LLP | Melissa Richards Smith Gillam & Smith, LLP | Russell A Korn Kilpatrick Townsend & Stockton LLP |
| Sarah Kamran Kilpatrick Townsend & Stockton LLP | Stephen Marshall Covington & Burling LLP | Sudip Kundu DTO Law |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)     ☒   No     ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

| ☒ None/Not Applicable | ☐ Additional pages attached | |
|---|---|---|
| | | |

# TABLE OF CONTENTS

RELIEF SOUGHT ........................................................................................1

ISSUE PRESENTED ..................................................................................1

FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED ...............5

REASONS FOR ISSUING THE WRIT ........................................................8

I.  The Writ Is Proper Because It Raises Broad, Fundamental, and Recurring Legal Questions. ...............................................................9

    A.  The "stream of commerce" theory of personal jurisdiction presents basic, unsettled legal questions concerning the nature of a foreign act that would purposefully avail a defendant of jurisdiction in a domestic forum. ........................................10

        1.  The Supreme Court's splintered "stream of commerce" decisions: *Asahi* and *J. McIntyre Machinery* ..........................10

        2.  This Court's "stream of commerce" decisions: Abstention from joining the debate between the *Asahi* opinions. .................................................................................12

        3.  The inconsistent application of the "stream of commerce" theory among district courts. ......................................................14

        4.  Inconsistent application of the "stream of commerce" theory within the Eastern District of Texas. ...........................18

    B.  The inconsistent application of the "stream of commerce" theory of personal jurisdiction to foreign companies that play no role in making, using, selling, offering for sale, or importing the accused products presents a basic, undecided legal question that should be resolved to thwart forum shopping in the wake of *TC Heartland* ........................................................21

II.  LGL Has a Clear and Undisputable Right to the Writ Because It Has Not Purposefully Availed Itself of the Eastern District of Texas or the United States generally. .................................................................24

A.    The district court's decision crediting conclusory, immaterial allegations over undisputed and material factual evidence was procedurally improper. .........................................................24

B.    LGL did not purposefully avail itself of the Eastern District of Texas (under a "stream of commerce" theory) or the United States (under Rule 4(k)(2)). ...............................................27

    1.    The district court's decision that the "stream of commerce" theory supplies the Eastern District of Texas with personal jurisdiction over LGL is indisputably wrong. .......................................................................27

    2.    The district court's decision that Rule 4(k)(2) supplies the Eastern District of Texas personal jurisdiction over LGL is indisputably wrong. .....................................30

CONCLUSION ...................................................................32

# TABLE OF AUTHORITIES

## Cases

*3G Licensing, S.A. v. Lenovo Grp. Ltd.*,
No. 17-84-LPS, 2019 WL 3974539 (D. Del. Aug. 22, 2019), *report and recommendation adopted*, 2019 WL 7635823 (D. Del. Sept. 19, 2019) 3, 14, 15, 29

*Abelesz v. OTP Bank*,
692 F.3d 638 (7th Cir. 2012) ................................................................. 8

*ACQIS LLC v. Lenovo Grp. Ltd.*,
572 F. Supp. 3d 291 (W.D. Tex. 2021) ............................................. 3, 17

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
689 F.3d 1358 (Fed. Cir. 2012) ............................................ 13, 14, 29

*AlexSam, Inc. v. Aetna, Inc.*,
119 F.4th 27 (Fed. Cir. 2024) ............................................................. 25

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
480 U.S. 102 (1987) ...................................................................... 8, 10

*AX Wireless LLC v. Lenovo Grp. Ltd.*,
No. 2:22-cv-280-RWS-RSP, 2023 WL 7105701 (E.D. Tex. Sept. 6, 2023), *report and recommendation adopted*, No. 2:22-cv-280-RWS-RSP, Dkt. No. 119 (E.D. Tex. Sept. 26, 2023) ........................................ 3, 17

*B/E Aerospace, Inc. v. Zodiac Aerospace*,
No. 2:16-cv-1417-JRG-RSP, 2018 WL 7140299 (E.D. Tex. Nov. 30, 2018), *report and recommendation adopted*, No. 2:16-cv-1417-JRG-RSP Dkt. No. 208 (E.D. Tex. Jan. 28, 2019) ............................................ 22

*Baker Laser Tech., LLC v. Seiko Epson Corp.*,
No. 2:24-cv-924-JRG (E.D. Tex.) ....................................................... 4

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
21 F.3d 1558 (Fed. Cir. 1994) ..................................................... passim

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ............................................................................ 5

*Capella Photonics, Inc. v. Infinera Corp.*,
   No. 2:20-cv-00077-JRG, 2021 WL 518478 (E.D. Tex. Feb. 10, 2021)...... 19, 20

*Celgard, LLC v. SK Innovation Co.*,
   792 F.3d 1373 (Fed. Cir. 2015) ...........................................................24

*Cellport Sys., Inc. v. Harman Int'l Indus. Inc.*,
   No. 4:22-cv-808-SDJ, 2024 WL 1337338 (E.D. Tex. Mar. 28, 2024) .............22

*Cheney v. U.S. Dist. Ct. for D.C.*,
   542 U.S. 367 (2004)................................................................................8

*Colida v. LG Elecs., Inc.*,
   77 F. App'x 523 (Fed. Cir. 2003) ............................................... 14, 29

*CommWorks Sols., LLC v. ASUSTek Comput. Inc.*,
   No. 2:24-cv-931-JRG (E.D. Tex.) ........................................................3

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)................................................................................5

*Def. Distributed v. Grewal*,
   971 F.3d 485 (5th Cir. 2020) ...............................................................24

*Douglass v. Nippon Yusen Kabushiki Kaisha*,
   46 F.4th 226 (5th Cir. 2022) (en banc) ............................................30

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
   815 F. App'x 529 (Fed. Cir. 2020) ....................................................25

*Freescale Semiconductor, Inc. v. Amtran Tech. Co.*,
   No. A-12-CV-644-LY, 2014 WL 1603665 (W.D. Tex. Mar. 19, 2014)............30

*Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*,
   No. 2:16-cv-01425-JRG-RSP, 2018 WL 279091 (E.D. Tex. Jan. 3, 2018),
   *objection overruled by* 2018 WL 837711 (E.D. Tex. Feb. 13, 2018) ...............20

*Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*,
   No. 2:16-cv-1425-JRG-RSP, 2018 WL 837711 (E.D. Tex. Feb. 13, 2018) ........4

*Gesture Tech. Partners, LLC v. Lenovo Grp. Ltd.*,
   No. 6:21-cv-00122-ADA, 2021 WL 6205789 (W.D. Tex. Dec. 29, 2021) .........9

*In re Lenovo Grp. Ltd.*,
　No. 24-106 (Fed. Cir.) ........................................................17

*In re Lenovo Grp.*,
　No. 24-106, Dkt. No. 17 (Fed. Cir. June 4, 2024)..............17

*In re Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*,
　No. 2021-180, 2021 WL 5292271 (Fed. Cir. Nov. 15, 2021) ...........................18

*In re Norplant Contraceptive Prods. Liab. Litig.*,
　899 F. Supp. 315 (E.D. Tex. 1995)....................................25

*In re Regents of the Univ. of Cal.*,
　964 F.2d 1128 (Fed. Cir. 1992) ..........................................8

*In re Roman Cath. Diocese of Albany*,
　745 F.3d 30 (2d Cir. 2014) .................................................8

*In re Stingray IP Sols., LLC*,
　56 F.4th 1379 (Fed. Cir. 2023) ..........................................9

*In re Volkswagen Grp. of Am., Inc.*,
　28 F.4th 1203 (Fed. Cir. 2022) ..........................................9

*J. McIntyre Mach., Ltd. v. Nicastro*,
　564 U.S. 873 (2011)...........................................................11

*Johnston v. Multidata Sys. Int'l Corp.*,
　523 F.3d 602 (5th Cir. 2008) ............................................25

*Maxell, Ltd. v. Lenovo Grp. Ltd.*,
　No. 6:21-cv-01169-ADA, Dkt. No. 146 (W.D. Tex. Feb. 6, 2023) ...................10

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
　890 F.3d 995 (Fed. Cir. 2018) ..........................................31

*Orange Elec. Co. v. Autel Intelligent Tech. Corp.*,
　No. 2:21-cv-240-JRG, 2022 WL 4368160 (E.D. Tex. Sept. 21, 2022).............22

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
　253 F.3d 865 (5th Cir. 2001) ..................................... 25, 29

*Papasan v. Allain*,
  478 U.S. 265 (1986)....................................................................................25

*Polar Electro Oy v. Suunto Oy*,
  829 F.3d 1343 (Fed. Cir. 2016) ............................................................13

*Roche v. Evaporated Milk Ass'n*,
  319 U.S. 21 (1943)......................................................................................8

*Sportscastr Inc. v. Sportradar Grp. AG*,
  No. 2:23-cv-472-JRG, 2024 WL 4219252 (E.D. Tex. Sept. 17, 2024).............22

*Synthes (U.S.A.) v. G.M. Dos. Reis Jr. Ind. Com de Equip. Medico*,
  563 F.3d 1285 (Fed. Cir. 2009) ............................................................31

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
  581 U.S. 258 (2017)......................................................................................3

*Theta IP, LLC v. Motorola Mobility LLC*,
  No. 22C3441, 2024 WL 1283706 (N.D. Ill. Mar. 25, 2024)............. 3, 15, 16, 29

*Travelers Indem. Co. v. Calvert Fire Ins. Co.*,
  798 F.2d 826 (5th Cir. 1986), *modified*, 836 F.2d 850 (5th Cir. 1988).............25

*United States v. Lapi*,
  458 F.3d 555 (7th Cir. 2006) .................................................................8

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*,
  848 F.3d 1346 (Fed. Cir. 2017) ............................................................25

## Statutes

28 U.S.C. § 1400(b) ..................................................................... 4, 7, 21

28 U.S.C. § 1404(a) .........................................................................4, 18

28 U.S.C. § 1651(a) ............................................................................8

## Rules

Fed. R. Civ. P. 4(k)(2)................................................................. 30, 31

Other Authorities

16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3933.1 (3d ed. 2023) .........................................................................8

**RELIEF SOUGHT**

Lenovo Group Limited (LGL) filed a motion to dismiss for lack of personal jurisdiction. The district court denied the motion, ruling that LGL (a holding company) purposefully availed itself of the Eastern District of Texas. Though the undisputed facts establish that LGL is not registered to do business in the United States, has no assets in the United States, makes no products, offers no products for sale, sells no products, and imports no products into the United States, the district court credited conclusory allegations over this evidence and held that LGL "chose to conduct business in Texas" and "place[s] the accused products into the stream of commerce." Appx8. The district court's application of the "stream of commerce" theory of personal jurisdiction is more expansive than any endorsed by the Supreme Court in *Asahi* and creates an end-run around the Supreme Court's *TC Heartland* decision.

LGL seeks an order (1) clarifying that the "stream of commerce" theory of personal jurisdiction cannot stretch to cover defendants who place no products into any stream of commerce, (2) vacating the district court's denial of LGL's motion, and (3) instructing the district court to dismiss the action.

**ISSUE PRESENTED**

This petition presents the issue of whether a district court may exert personal jurisdiction over a foreign holding company under the "stream of commerce" theory

1

of personal jurisdiction simply because its indirect domestic subsidiaries purchase products, import them into the United States, and sell them here.

To support its decision, the district court credited general, conclusory allegations of the plaintiff over material, undisputed facts contained in a sworn declaration submitted by LGL. This is not the law. The law holds that when *evidence* presented by the defendant conflicts with *evidence* presented by the plaintiff, that conflict is resolved in favor of the plaintiff at the pleading stage. But the law does not credit conclusory allegations of the plaintiff over undisputed, evidence-supported facts presented by the defendant. And the district court's expansive view of "stream of commerce" jurisdiction led the court to conclude that LGL—a Hong Kong-based holding company that plays no role in the accused products other than being an indirect shareholder of the domestic entities that do— purposefully availed itself of the Eastern District of Texas. The growing "stream of commerce" precedent in the Eastern District of Texas stretches "stream of commerce" jurisdiction far broader than any articulation of it in the Supreme Court's splintered *Asahi* decision.

There is a conflict between the district courts on this issue. For example, the District of Delaware in a detailed opinion held that LGL "could not be subject to

personal jurisdiction based on the stream of commerce theory."[1]   The Northern

District of Illinois also found that "the stream of commerce theory does not allow

this Court to exercise jurisdiction over LGL."[2]   Yet, the Eastern and Western

Districts of Texas have come to a different conclusion applying what should be the

same law.[3]

Plaintiffs have caught on to the lack of clarity in the law and are using it for

forum shopping following *TC Heartland LLC v. Kraft Foods Group Brands LLC*,

581 U.S. 258 (2017).  LGL has identified at least 121 patent infringement cases that

have been filed, in 2024 alone, in the Eastern District of Texas alleging a "stream of

commerce" theory of personal jurisdiction against foreign defendants.[4]   *See, e.g.*,

*CommWorks Sols., LLC v. ASUSTek Comput. Inc.*, No. 2:24-cv-931-JRG (E.D.

Tex.); *Baker Laser Tech., LLC v. Seiko Epson Corp.*, No. 2:24-cv-924-JRG (E.D.

---

[1] *3G Licensing, S.A. v. Lenovo Grp. Ltd.*, No. 17-84-LPS, 2019 WL 3974539, at *6 (D. Del. Aug. 22, 2019), *report and recommendation adopted*, 2019 WL 7635823 (D. Del. Sept. 19, 2019).

[2] *Theta IP, LLC v. Motorola Mobility LLC*, No. 22C3441, 2024 WL 1283706, at *6 (N.D. Ill. Mar. 25, 2024).

[3] The Eastern District of Texas in at least the decision on appeal and in *AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-cv-280-RWS-RSP, 2023 WL 7105701 (E.D. Tex. Sept. 6, 2023), *report and recommendation adopted*, No. 2:22-cv-280-RWS-RSP, Dkt. No. 119 (E.D. Tex. Sept. 26, 2023), and the Western District of Texas in *ACQIS LLC v. Lenovo Grp. Ltd.*, 572 F. Supp. 3d 291 (W.D. Tex. 2021).

[4] Based on a December 10, 2024, Docket Navigator search of complaints filed in the Eastern District of Texas since January 1, 2024 with the search string: ("under the law of" /10 (china or japan or singapore or "hong kong" or korea or taiwan or germany or netherlands or france or "united kingdom" or italy or sweden or finland or denmark) and "stream of commerce").

Tex.).  LGL, specifically, has been a defendant in eight of those cases.  For those complaints against LGL, though they assert personal jurisdiction over LGL based on its involvement in an alleged "stream of commerce," six of these complaints failed to name any of LGL's US-based subsidiaries (those entities who actually sell, offer for sale, or import the accused products) as defendants.  Had these entities been named as a party, 28 U.S.C. § 1400(b) would hold venue improper in Texas.

Even within the Eastern District of Texas, there is a conflict between how the district court applies "stream of commerce" jurisdiction.  When defending its exercise of personal jurisdiction over a foreign defendant, the Eastern District of Texas applies the "stream of commerce" theory broadly on motions to dismiss.  Yet, when determining whether another domestic venue would have personal jurisdiction over a defendant (in the context of a motion to transfer under § 1404(a)), it has applied the theory narrowly—refusing to transfer cases to other courts on the basis that the transferee courts lack personal jurisdiction over similarly situated defendants.[5]

LGL seeks interlocutory review and asks that the Court resolve the growing conflict in the "stream of commerce" theory of personal jurisdiction for companies, like LGL, that place no product in the stream—playing no role in the creation of the

---

[5] *See, e.g.*, *Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*, No. 2:16-cv-1425-JRG-RSP, 2018 WL 837711 (E.D. Tex. Feb. 13, 2018).

accused product, its insertion into the stream of commerce, or its passage therethrough. So long as this conflict remains, companies such as LGL are prevented from "structur[ing] their primary conduct with some minimum assurance as to whether that conduct will and will not render them liable to suit." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

### FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED

Universal Connectivity Technologies Inc. ("UCT") sued LGL in the Eastern District of Texas, accusing certain Lenovo-branded products of infringing the claims of patents UCT purchased.

LGL is a holding company. Appx49 at ¶ 3. It is incorporated and has its principal place of business in Hong Kong. *Id.* at ¶ 2. LGL has no bank accounts, properties, or any other assets in the United States, has no employees in the United States, and is not authorized, registered, or licensed to do business anywhere in the United States. Appx50 at ¶ 4.

As a holding company, LGL does not place anything into the stream of commerce. LGL does not make products at all, including products under the Lenovo brands. Appx49 at ¶ 3. Nor does it sell, offer for sale, export, import, or otherwise distribute Lenovo products anywhere—not in the United States generally and not in Texas specifically. Appx49–50 at ¶¶ 3–6. Specifically, LGL does not engage in

sales, advertising, or marketing efforts targeting the United States, or sell or offer to sell any Lenovo-branded products on the Lenovo.com website. Appx50 at ¶ 5. LGL does not perform research and development for Lenovo-branded products. Appx51 at ¶ 9.

For Lenovo-branded products sold in the United States, those are all sold by non-party Lenovo (United States) Inc. ("Lenovo US"). Appx50 at ¶ 6. Lenovo US is a Delaware corporation with a principal place of business in North Carolina. *Id.* Lenovo US buys those products from non-party Lenovo PC HK, then imports them into the United States for sale. *Id.*

LGL and Lenovo US are separate business entities. Despite the fact that Lenovo US is an indirect subsidiary of LGL, there are no common officers or directors between LGL and Lenovo US. Appx51 at ¶ 11. LGL files separate tax returns from Lenovo US. *Id.* at ¶ 12. LGL has not entered into any distribution, sales, or marketing agreements with Lenovo US or any other U.S. affiliate related to Lenovo US with respect to Lenovo-branded products. Appx50 at ¶ 7. Moreover, LGL is not involved in the daily business activities and decisions of Lenovo US relating to the use, sale, offer for sale, marketing, distribution, or importation of Lenovo-branded products in the United States. *Id.*

In sum, LGL is a holding company which does not control or direct the creation of any product or the placement of any product into the stream of commerce.

As a holding company, LGL simply holds investments in companies that place products into the stream of commerce.  Far from purposefully availing itself of Texas or the United States, LGL has purposefully remained outside of the United States— LGL is not authorized, registered, or licensed to do business in the United States, and it has no assets in the United States.  *Id.* at ¶ 4.  Yet, the district court held LGL purposefully availed itself of the Eastern District of Texas under the "stream of commerce" theory based on (1) acts performed by LGL's domestic subsidiaries; and (2) UCT's allegations that LGL acted in concert with them—even though the court did not pierce the corporate veil between these separate corporate entities.  Appx5–8.

Further, in addition to finding LGL purposefully availed itself of Texas under the "stream of commerce" theory, the district court also granted a motion to compel filed by UCT and ordered LGL to produce documents in the possession, custody, and control of subsidiaries including non-party Lenovo US based on the court's view that "[a] parent corporation generally has control over documents and information in its subsidiaries' possession, custody, or control."  Appx70.  Thus, this case is headed towards trial in the Eastern District of Texas, as if Lenovo US were named as a party, even though if Lenovo US were a party to this case, venue would be improper under 28 U.S.C. § 1400(b).

## REASONS FOR ISSUING THE WRIT

The Federal Circuit has broad jurisdiction and discretion to issue writs of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651(a), to correct a "clear abuse of discretion or usurpation of judicial power." *In re Regents of the Univ. of Cal.*, 964 F.2d 1128, 1130 (Fed. Cir. 1992). Mandamus typically requires the petitioner to show that (1) he has "no other adequate means to attain the relief he desires," (2) he has a "clear and indisputable" right to the writ, and (3) the writ is "appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (citations omitted).

Despite the demanding requirements for mandamus relief, courts of appeals have granted writs of mandamus to correct the district courts' erroneous personal jurisdiction rulings. *See, e.g.*, *In re Roman Cath. Diocese of Albany*, 745 F.3d 30 (2d Cir. 2014); *Abelesz v. OTP Bank*, 692 F.3d 638 (7th Cir. 2012). This use of mandamus comports with its "traditional use . . . to confine an inferior court to a lawful exercise of its prescribed jurisdiction." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943); *United States v. Lapi*, 458 F.3d 555, 560–61 (7th Cir. 2006); 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3933.1 (3d ed. 2023). Indeed, the Supreme Court's landmark decision on the "stream of commerce" theory of personal jurisdiction arose via a writ of mandamus from state court. *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 107–08 (1987).

8

Moreover, mandamus may be used "in narrow circumstances where doing so is important to 'proper judicial administration.'" *In re Stingray IP Sols., LLC*, 56 F.4th 1379, 1382 (Fed. Cir. 2023) (citations omitted). Such circumstances include where an appellate court corrects a district court's answers to "basic, undecided" legal questions concerning judicial administration, especially where a district court's decisions are in conflict. *Id.* (citations omitted). Under the "administration of justice" standard, a petitioner is not required to satisfy the *Cheney* requirements. *Id.* This Court has granted mandamus under this standard on issues concerning lack of personal jurisdiction or improper venue. *Id.* at 1383–84; *In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1207 (Fed. Cir. 2022).

## I.    The Writ Is Proper Because It Raises Broad, Fundamental, and Recurring Legal Questions.

Whether a defendant in a patent suit has been properly sued in a particular forum is a fundamental issue in patent law. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994). This issue has been raised— and addressed in the context of venue—in repeated mandamus petitions filed with this Court and in the seminal case of *TC Heartland*. Indeed, prior decisions have found that venue is not proper in the Western District of Texas for Lenovo US.[6]

---

[6] *Gesture Tech. Partners, LLC v. Lenovo Grp. Ltd.*, No. 6:21-cv-00122-ADA, 2021 WL 6205789 (W.D. Tex. Dec. 29, 2021) (granting Lenovo US's motion to dismiss for improper venue); *Maxell, Ltd. v. Lenovo Grp. Ltd.*, No. 6:21-cv-01169-ADA,

Stymied by these rulings, plaintiffs have developed a new tactic for forum shopping: ignore the domestic subsidiaries who actually make, sell, or import the accused products and instead sue foreign parent companies using threadbare allegations of "stream of commerce" jurisdiction to permit the choice of their preferred forum.

> **A.    The "stream of commerce" theory of personal jurisdiction presents basic, unsettled legal questions concerning the nature of a foreign act that would purposefully avail a defendant of jurisdiction in a domestic forum.**

The Supreme Court's "stream-of-commerce" theory of personal jurisdiction is a complex and unsettled area of law, as first demonstrated in *Asahi*.

> **1.    The Supreme Court's splintered "stream of commerce" decisions: *Asahi* and *J. McIntyre Machinery***

Asahi was a Japanese manufacturer of an inner tube valve assembly that was alleged to be both defective and a cause of a motorcycle crash in California. *Asahi*, 480 U.S. at 105–06. At issue was whether Asahi purposefully availed itself of California by manufacturing the valve assembly in Japan and having an awareness that products sold in California incorporated its valve assembly. *Id.*

Four Justices, led by Justice O'Connor, applied a narrow "stream-of-commerce" theory, holding that the mere "placement of a product into the stream of commerce" was not enough to establish jurisdiction, as jurisdiction "must come

---

Dkt. No. 146 (W.D. Tex. Feb. 6, 2023) (report and recommendation from magistrate judge recommending grant of Lenovo US's motion to dismiss for improper venue).

about by *an action of the defendant purposefully directed toward the forum State*."

*Id.* at 112 (emphasis in original). These Justices would have held California's

exercise of jurisdiction over Asahi violates due process, noting:

> Asahi does not do business in California. It has no
> office, agents, employees, or property in California. It
> does not advertise or otherwise solicit business in
> California. It did not create, control, or employ the
> distribution system that brought its valves to California.
> There is no evidence that Asahi designed its product in
> anticipation of sales in California.

*Id.* at 112–13 (internal citation omitted). Another four Justices, however, applied

the "stream-of-commerce" theory more broadly, as articulated in Justice Brennan's

concurrence, finding that personal jurisdiction could be appropriate if it was

foreseeable to the defendant that a product it sold would reach the forum state. *Id.*

at 117. These Justices would have found California's exercise of jurisdiction over

Asahi proper given the foreseeability that a product manufactured and sold by Asahi

would end up in California. *Id.* at 121. With neither approach gaining a majority,

*Asahi* did not create binding precedent. Ultimately, the Court held that California's

exercise of jurisdiction over Asahi would be "unreasonable and unfair." *Id.* at 116.

The Supreme Court then revisited the "stream-of-commerce" theory in *J.*

*McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). There, a plurality of Justices

adopted Justice O'Connor's narrower approach in *Asahi*, concluding that

jurisdiction depends on whether the defendant specifically targeted the forum state,

not merely on the "foreseeability" that products it sold might end up there. *Id.* at 882 ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."). Applying this principle, the plurality found no personal jurisdiction over a British defendant in New Jersey. Like *Asahi*, however, *McIntyre* did not set a binding precedent.

> **2.    This Court's "stream of commerce" decisions: Abstention from joining the debate between the *Asahi* opinions.**

This Court has addressed the stream of commerce theory of personal jurisdiction dozens of times. In *Beverly Hills Fan*, the Court applied the "stream of commerce" theory to establish personal jurisdiction in Virginia over a Chinese manufacturer who produced goods in China and purposefully shipped the goods to Virginia through an established distribution channel. 21 F.3d at 1566. The Court held that personal jurisdiction was appropriate because the manufacturer, acting "in consort" with the distributor, placed the products into the stream of commerce, knowing their likely destination. *Id.* Rather than pick which version of the "stream of commerce" theory recited in *Asahi* should apply, this Court affirmed the exercise of personal jurisdiction because it would meet either version. *See, e.g.*, *id.* ("We need not join this debate here, since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing."). This

Court has taken a consistent approach in other cases—essentially applying both versions and determining that the result would be the same under either articulation of the theory. *See AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1364 (Fed. Cir. 2012) ("Subsequent panels of this court have followed that rule, finding that the evidentiary record before them made the result clear, or could make the result clear after further discovery, without requiring the court to take a side on the *Asahi* divide."). This Court has not issued a decision in a case in which the facts fall between the two theories and thus has not been required to decide which version of the theory should apply.

Thus, as in *Beverly Hills Fan*, this Court has affirmed the exercise of personal jurisdiction over foreign defendants that have manufactured or shipped their products to United States venues through a U.S.-based distributor. *See, e.g.*, *Beverly Hills Fan*, 21 F.3d at 1565–66 ("No more [than purposefully shipping the accused fan into Virginia through an established distribution channel] is usually required to establish specific jurisdiction."); *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1351 (Fed. Cir. 2016) (upholding personal jurisdiction over a European company that shipped products to Delaware through a U.S.-based distributor).

Conversely, the Court has consistently found personal jurisdiction absent where defendants played no role in making, shipping, or distributing the accused products that reached the forum through the stream of commerce. *See, e.g.*, *AFTG-*

*TG*, 689 F.3d at 1361 (noting the district court found the plaintiff "merely speculated that the defendants placed accused devices into the stream of commerce"); *Colida v. LG Elecs., Inc.*, 77 F. App'x 523, 524 (Fed. Cir. 2003) (finding New Jersey lacks personal jurisdiction over a Korean parent company because that company "does not ship" any accused products to customers in that state, even though its U.S. subsidiary had a place of business in New Jersey).

### 3. The inconsistent application of the "stream of commerce" theory among district courts.

The application of the "stream of commerce" theory of personal jurisdiction in the district courts, however, has been inconsistent on nearly identical facts. Given that personal jurisdiction over an alleged infringer under a "stream of commerce" theory is a matter of Federal Circuit law, one would not expect to see such conflict and confusion among the district courts. *Beverly Hills Fan*, 21 F.3d at 1564–65 ("The creation of a uniform body of Federal Circuit law in this area would clearly promote judicial efficiency, would be consistent with our mandate, and would not create undue conflict and confusion at the district court level.").

Confronted with the same defendant—LGL—and similar jurisdiction-related evidence, different district courts have come to opposite conclusions. For example, in *3G Licensing*, the plaintiff alleged that "LGL manufactures and distributes the accused smartphone products with the intent that the products be sold in the United States." 2019 WL 3974539, at *4. To support that allegation, the plaintiff provided

14

excerpts from an LGL annual report (like the one UCT provided to the district court in this case) which contained language the Delaware district court found to be "ambiguous" as to whether LGL was one of the entities that were taking actions together to target the U.S. market. *Id.* at *5. In response, LGL submitted a declaration (like the one LGL submitted to the district court in this case) that explained LGL's activities and relationship with its subsidiaries. Specifically, the declaration stated that LGL "does not import or ship any products into the United States, nor does [it] manufacture, sell, or offer for sale any products in the United States." *Id.* at 6. In light of the overall record, the Delaware district court found that the evidence left "no room for ambiguity" to the conclusion that "Lenovo Group is a holding company that does not produce goods or services itself." *Id.* Accordingly, the Delaware district court found that LGL "does not intend to (nor, in fact, does it) place the accused products into the United States (and Delaware) markets. Thus, Lenovo Group could not be subject to personal jurisdiction based on the stream of commerce theory." *Id.*

The Northern District of Illinois likewise held that it lacked personal jurisdiction over LGL under the "stream of commerce" theory. In *Theta IP*, the plaintiff relied on the "close relationship that LGL's various subsidiaries have with each other . . . to suggest that LGL must control the supply chain." 2024 WL 1283706, at *6. The Illinois district court, however, found that "the fact that LGL's

subsidiaries work with each other does not speak to their relationship with LGL or LGL's role in manufacturing, selling, or marketing the Accused Products, or any other products for that matter." *Id.* In addition, the plaintiff there also based its assertion that LGL had control over the business decisions of its subsidiaries on purported overlapping leadership and LGL's involvement in a contract between its subsidiaries. *Id.* The district court rejected the plaintiff's attempt to blur the lines between different business entities, finding that the overlap of executives, even if it exists, "does not establish LGL's control" over the sales by its subsidiaries, and that LGL was merely performing "standard administrative service" for its subsidiaries. *Id.* Thus, the Illinois district court concluded that "the stream of commerce theory does not allow [it] to exercise jurisdiction over LGL," because the plaintiff failed to provide sufficient evidence to establish personal jurisdiction "under either test" of *Asahi*. *Id.*

However, the Eastern and Western Districts of Texas have recently reached the opposite conclusion. They found that personal jurisdiction was appropriate under the "stream of commerce" theory in similar situations where the Delaware and Illinois district courts found that personal jurisdiction could not lie. For example, in *ACQIS*, the Western District of Texas accepted the plaintiff's allegation that "LGL acts in consort with other defendants in placing the Accused Products in the stream of commerce" but failed to credit clear evidence, including a sworn declaration, that

16

LGL is a holding company that conducts no business activity in Texas or elsewhere in the United States.  572 F. Supp. 3d at 305.  The *ACQIS* plaintiff, like the *3G Licensing* plaintiff did with the ambiguous language in the LGL annual report, pointed to a website which "insinuates" that there was no distinction between LGL and its subsidiaries, and that the "Lenovo Group" operated as a single company.  *Id.*  The *ACQIS* plaintiff also, like the *Theta IP* plaintiff, relied on an agreement between LGL's subsidiaries to suggest that LGL, through the purported control over its subsidiaries, was involved in the manufacture, sale, and distribution of products in the United States.  *Id.*  While both the Delaware and the Illinois district courts dismissed these showings as insufficient to establish personal jurisdiction, the Western District of Texas concluded it could exercise personal jurisdiction over LGL on the basis that "LGL acts in consort with other defendants under a stream of commerce theory."  *Id.*

And, most recently in *AX Wireless*, the Eastern District of Texas attributed to LGL the acts of LGL's non-party domestic subsidiaries to support the exercise of jurisdiction under a "stream of commerce" theory.  2023 WL 7105701, at *3–5. LGL filed a mandamus petition in that case.  *In re Lenovo Grp. Ltd.*, No. 24-106, Dkt. No. 2 (Fed. Cir. Dec. 1, 2023).[7]

---

[7] During the 109-day pendency of that petition, LGL settled its dispute with AX Wireless, mooting the issue for purposes of that case.  *See In re Lenovo Grp.*, No. 24-106, Dkt. No. 17 (Fed. Cir. June 4, 2024).

### 4.     Inconsistent application of the "stream of commerce" theory within the Eastern District of Texas.

Even within the Eastern District of Texas, there is a conflict between how the court applies "stream of commerce" on motions to dismiss and how it applies the theory on motions to transfer.  District courts can only transfer cases to other courts where the case "might have been brought" originally.  28 U.S.C. § 1404(a).  Thus, in considering transfer motions, courts must determine whether the transferee forum would have personal jurisdiction over the defendants.  While the Eastern District of Texas applies the "stream of commerce" theory broadly when denying motions to dismiss (meaning the cases remain in Texas), it applies the theory narrowly when considering whether the transferee forum would have personal jurisdiction in transfer motions (meaning the cases also remain in Texas).[8]

---

[8] Judge Hughes observed the "incongruous" application of personal jurisdiction law in *In re Meraki Integrated Circuit (Shenzhen) Technology, Ltd.*, No. 2021-180, 2021 WL 5292271, at *2 (Fed. Cir. Nov. 15, 2021).  There, the Western District of Texas "found personal jurisdiction appropriate in Texas under a stream-of-commerce approach," on the basis that the defendant "has entered into business with customers with 'expansive and nationwide product distribution networks' for goods incorporating [the defendant's] accused products." *Id.* The district court then "inexplicably change[d] course to find otherwise and deny transfer based on the threshold question" that the transferee court in California would not have personal jurisdiction. *Id.* Judge Hughes commented in his concurrence that "this is not a situation where jurisdiction might be proper in Texas, but not in California," and that "the district court's own stated basis for jurisdiction over [the defendant] would apply equally to both districts (or be lacking in both districts)." *Id.*

This conflict is evident in *Capella Photonics, Inc. v. Infinera Corp.*, No. 2:20-cv-00077-JRG, 2021 WL 518478 (E.D. Tex. Feb. 10, 2021). There, the plaintiff sued Infinera and four of its subsidiaries, and the defendants sought to transfer the case to the Northern District of California under § 1404(a). *Id.* at *1. Infinera was headquartered in Sunnyvale, California, and its subsidiaries, including their executives, all operated from the same Sunnyvale office space. *Id.* at *3. The accused products had been sold or offered for sale in the Northern District of California. *Id.* Even the plaintiff's complaint alleged that each defendant "has committed acts of infringement throughout the United States." *Id.*

The Eastern District of Texas found that the Northern District of California did not have personal jurisdiction over the defendants and declined to transfer the case there. *Id.* at *1. The Texas district court found that the "facts raised by Defendants establish, at most, that Infinera may be subject to personal jurisdiction in the Northern District of California." *Id.* at *5. As to the subsidiaries, the district court found that "[w]ithout more, Infinera's contacts with California cannot create personal jurisdiction over its subsidiaries," because "imputing Infinera's contacts to the Subsidiary Defendants or assert[ing] some sort of joint enterprise theory . . . is tantamount to piercing the corporate veil," which the defendants fail to do. *Id.* The district court also noted that one of the subsidiaries was "a holding company that 'does not provide any products or services.'" *Id.* (internal citation omitted). Thus,

in the district court's view, the defendants' facts failed to "clearly establish[] which entities have contacts with California." *Id.*

The conflict in applying the personal jurisdiction law can also be observed in *Fundamental Innovation Systems International LLC v. LG Electronics, Inc.*, No. 2:16-cv-01425-JRG-RSP, 2018 WL 279091 (E.D. Tex. Jan. 3, 2018), *objection overruled by* 2018 WL 837711 (E.D. Tex. Feb. 13, 2018). In that case, the plaintiff sued several LG entities, who then moved to transfer the case to New Jersey. 2018 WL 279091, at *1. The magistrate judge in the Eastern District of Texas denied the transfer motion on the basis that the defendants failed to show that the New Jersey district court would have personal jurisdiction over one of the defendants, LG Alabama. *Id.* LG Alabama conducted business in New Jersey. 2018 WL 837711, at *3. It also had two officers and a director with offices in New Jersey. *Id.* It employed four individuals in New Jersey who serviced and repaired LG products purchased in the United States. *Id.* The plaintiff alleged that all defendants, including LG Alabama, "make, use, sell, offer for sale, and import into the United States the Accused Products," including sales made "via its own web sites, including http://www.lg.com/us/, and through authorized retailers and distributors." *Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*, No. 2:16-cv-01425-JRG-RSP (E.D. Tex.) Dkt. No. 33 ¶ 22.

20

The magistrate judge explained that the fact that "LG Alabama may share officers with the corporate parent, and those officers may have a New Jersey business address or conduct business from New Jersey" was not enough to establish personal jurisdiction in New Jersey, because "each corporation must be assessed separately, absent disregard for corporate separateness." 2018 WL 279091, at *2. The magistrate judge also found that the allegations that the supposed "LG corporate parent" sold accused products through its website and through authorized retailers and distributors did not "support the conclusion that LG Alabama has any role in the sale of the accused products through LG's website." *Id.* at *3. In overruling objections and upholding the magistrate judge's decision, the district judge in the Eastern District of Texas found that facts raised by LG Alabama failed to "suggest any sort of stream of commerce-type theory that might support the conclusion that LG Alabama is subject to specific jurisdiction in New Jersey." 2018 WL 837711, at *4.

**B.    The inconsistent application of the "stream of commerce" theory of personal jurisdiction to foreign companies that play no role in making, using, selling, offering for sale, or importing the accused products presents a basic, undecided legal question that should be resolved to thwart forum shopping in the wake of *TC Heartland*.**

Taking advantage of the conflict both among and within district courts, plaintiffs have devised a new tactic for forum shopping, one that allows them to avoid the patent venue statute, 28 U.S.C. § 1400(b). Realizing venue is improper in

Texas over the domestic companies who actually make, sell, or distribute the accused products, these plaintiffs ignore those companies and instead go after their foreign parent companies, knowing that the Eastern District of Texas extends personal jurisdiction over foreign holding companies based on threadbare "stream of commerce" allegations.  Indeed, LGL has identified 34 motions to dismiss filed by out-of-state company defendants against the plaintiffs who invoked the "stream of commerce" theory in the Eastern District of Texas in the last ten years, and the district court denied 30 of them outright and permitted jurisdictional discovery in two cases.[9] *See, e.g.*, *Sportscastr Inc. v. Sportradar Grp. AG*, No. 2:23-cv-472-JRG, 2024 WL 4219252 (E.D. Tex. Sept. 17, 2024); *Orange Elec. Co. v. Autel Intelligent Tech. Corp.*, No. 2:21-cv-240-JRG, 2022 WL 4368160 (E.D. Tex. Sept. 21, 2022).  Only two defendants successfully had their cases dismissed.  *Cellport Sys., Inc. v. Harman Int'l Indus. Inc.*, No. 4:22-cv-808-SDJ, 2024 WL 1337338 (E.D. Tex. Mar. 28, 2024); *B/E Aerospace, Inc. v. Zodiac Aerospace*, No. 2:16-cv-1417-JRG-RSP, 2018 WL 7140299 (E.D. Tex. Nov. 30, 2018), *report and recommendation adopted*, No. 2:16-cv-1417-JRG-RSP Dkt. No. 208 (E.D. Tex. Jan. 28, 2019).  In comparison, foreign defendants have fared much better in overcoming the "stream of commerce" allegations in other district courts, such as the District of Delaware.

---

[9] Based on a December 10, 2024, Docket Navigator search of motions to dismiss for lack of personal jurisdiction involving "stream of commerce" decided by the Eastern District of Texas since January 1, 2015.

This divergence has created a significant incentive for forum shopping. An increasing number of foreign companies are being dragged into the courtrooms in the Eastern District of Texas for actions performed by their domestic subsidiaries who presumably cannot be sued there. LGL has identified at least 273 cases in 2024 alone that were filed in the Eastern District of Texas against foreign company defendants, and the plaintiffs relied on "stream of commerce" as their bases for personal jurisdiction in nearly half of them.[10]  Unless addressed conclusively by this Court, this trend will likely continue. In the case of LGL, the precedent from the Eastern District of Texas is beginning to snowball. *See* Appx7 ("Instead, the Court finds the decisions of other Texas district courts, including another Court in this district, more persuasive.").

The complex and unsettled status of the "stream of commerce" theory of personal jurisdiction, as well as the inconsistent application of the theory between different districts—and even within the same district—presents a "basic, undecided" legal question concerning judicial administration, one on which LGL respectfully requests this Court to provide some much-needed clarity.

---

[10] Based on a December 10, 2024, Docket Navigator search of complaints filed in the Eastern District of Texas since January 1, 2024 with the search string: ("under the law of" /10 (china or japan or singapore or "hong kong" or korea or taiwan or germany or netherlands or france or "united kingdom" or italy or sweden or finland or denmark)).

II.    **LGL Has a Clear and Undisputable Right to the Writ Because It Has Not Purposefully Availed Itself of the Eastern District of Texas or the United States generally.**

As determined by the courts in Delaware and Illinois, LGL is a holding company that does not place products into any stream. It does not make, sell, or otherwise bring products to the United States and, thus, has not availed itself of the United States markets under the "stream of commerce" theory of personal jurisdiction.

A.    **The district court's decision crediting conclusory, immaterial allegations over undisputed and material factual evidence was procedurally improper.**

The district court treated UCT's sweeping allegations as true and resolved conflicts between UCT's allegations and LGL's factual evidence in UCT's favor to conclude that UCT made a prima facie showing of specific personal jurisdiction in Texas. Appx6. This is legal error.

UCT "bears the burden of affirmatively establishing" that both "the defendant purposefully directed its activities at residents of the forum state," and "the claim arises out of or relates to the defendant's activities with the forum state." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015); *see also Def. Distributed v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020). On a motion to dismiss, a district court must "accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's

favor." *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed.
Cir. 2017); *see also Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th
Cir. 2008).

However, courts are "not bound to accept as true a legal conclusion couched
as a factual allegation." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x
529, 538 (Fed. Cir. 2020) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986));
*see also Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869
(5th Cir. 2001) ("[C]ourts are not required to credit conclusory allegations, even if
uncontroverted.") (internal quotation marks omitted). Thus, "when unsubstantiated
allegations are controverted by affidavit or declaration, the affidavit or declaration
trumps the allegations." *In re Norplant Contraceptive Prods. Liab. Litig.*, 899 F.
Supp. 315, 317 (E.D. Tex. 1995) (citing *Travelers Indem. Co. v. Calvert Fire Ins.
Co.*, 798 F.2d 826, 831 (5th Cir. 1986), *modified*, 836 F.2d 850 (5th Cir. 1988)).
This Court reviews "a trial court's decision that an allegation is factual or legal, well-
pled or merely conclusory" de novo. *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 39–
40 (Fed. Cir. 2024).

Here, without piercing the corporate veil, the district court concluded that
LGL "chose to conduct business in Texas through its subsidiaries" and that it "uses
its multi-level corporate structure to place the accused products into the stream of
commerce." Appx8. The court cited four bases supporting its conclusion. First, the

court credited UCT's allegation that LGL "acts in concert with its wholly owned subsidiaries to deliver the accused products into the Texas market." Appx6. Second, the court credited UCT's allegation that because LGL's subsidiaries distribute products in Texas, "LGL 'knew, or reasonably could have foreseen, that a termination point of the channel' was Texas." *Id.* (citation omitted). Third, the court held that because LGL's declarant (Mr. Chim) "opines on the relationship between LGL and its subsidiaries as an employee of an LGL subsidiary indicates that there is at least some degree of lack of separateness between LGL and its subsidiaries." Appx7. Finally, the court credited UCT's allegation that LGL has employees living and working in Texas.[11] *Id.*

But even if UCT's conclusory and sweeping allegations are credited, the undisputed, evidence-supported facts show that LGL does not create the accused products, place them in any stream of commerce, or direct that stream to Texas. Appx49 at ¶ 3. The uncontroverted factual evidence reveals that LGL does not make the accused products, does not sell the accused products, does not offer the accused products for sale, and does not import the accused products. *Id.* LGL is not involved in the daily business decisions of those entities that do. Appx50 at ¶ 7. Nor has LGL entered into any agreement with any entity regarding the accused products. *Id.* At

---

[11] And though LGL disputes this (Appx50–51 at ¶¶ 4, 11, 13), the district court never found that any alleged LGL employees in the United States play any role with respect to the accused products.

bottom, a party cannot purposefully avail itself of a forum state under the "stream of commerce" theory of personal jurisdiction when it places no products in the stream and plays no role whatsoever in that stream.

> **B.     LGL did not purposefully avail itself of the Eastern District of Texas (under a "stream of commerce" theory) or the United States (under Rule 4(k)(2)).**

The actions of LGL (a holding company based in Hong Kong) alone, without imputing the actions of its indirect subsidiaries to it (the district court did not pierce the corporate veil), demonstrate that LGL never purposefully availed itself of the Eastern District of Texas or the United States.

> **1.     The district court's decision that the "stream of commerce" theory supplies the Eastern District of Texas with personal jurisdiction over LGL is indisputably wrong.**

LGL is a holding company that has no bank accounts, properties, or any other assets in the United States.  Appx49 at ¶ 3.  Nor does it have any employees in the United States.  Appx50 at ¶ 4.

As a holding company, LGL does not perform research and development for Lenovo-branded products, does not make any products, including products under the Lenovo brands, does not sell, offer for sale, export, import, or otherwise distribute Lenovo products anywhere—not in the United States and not in Texas.  Appx49–51 at ¶¶ 3-6, 9.  LGL also does not engage in sales, advertising, or marketing efforts

targeting the United States, or sell or offer to sell any Lenovo-branded products on the Lenovo.com website. Appx50 at ¶ 5.

LGL and Lenovo US, which is responsible for the sales of Lenovo-branded products in the United States, are separate business entities. LGL has not entered into any distribution, sales, or marketing agreements with Lenovo US or any other U.S. affiliate related to Lenovo US with respect to Lenovo-branded products. *Id.* at ¶ 7. LGL is not involved in the daily business activities and decisions of Lenovo US relating to the use, sale, offer for sale, marketing, distribution, or importation of Lenovo US products in the United States. *Id.*

None of these facts are disputed by UCT. UCT relied on some public-facing materials to suggest LGL and its subsidiaries worked "in concert" to place the Lenovo-branded products into the stream of commerce. Appx15 at ¶ 8. However, having a similar name as other related companies and having been grouped together with other companies for marketing or investor publications are simply not evidence for the involvement of LGL in any specific activity relating to the stream of commerce.

LGL does not satisfy any version of the "stream of the commerce" test. In *Asahi*, the Supreme Court did not issue a majority opinion regarding whether purposeful availment of a forum required more from a defendant than the mere act of placing a product in the stream of commerce that ultimately winds up in the forum.

28

*See Beverly Hills Fan*, 21 F.3d at 1566.  Here, LGL does not perform even that "mere act" because LGL places no products in the stream of commerce.  Appx49 at ¶ 3. Like the defendants in *Colida* and *AFTG-TG*, who this Court found were not subject to personal jurisdiction in the forum states, LGL "does not ship" any accused products to customers in Texas and does not maintain any "continuous, established distribution channels" in Texas.  *Colida*, 77 F. App'x at 524; *AFTG*-TG, 689 F.3d at 1365.  LGL also has no "control over its subsidiaries," and does not "participate in the daily activities of its subsidiaries." *Theta IP*, 2024 WL 1283706, at *4.  Rather, as the Delaware district courts found, there is "no room for ambiguity" that LGL is "a holding company that does not produce goods or services itself," and "does not intend to (nor, in fact, does it) place the accused products into the United States . . . markets." *3G Licensing*, 2019 WL 3974539, at *6.

UCT's Complaint presents threadbare, conclusory allegations that LGL "directly and/or through subsidiaries or intermediaries" makes, uses, imports, offers to sell, and or sells products in the United States.  Appx17 at ¶ 12; *see also* Appx14–16 at ¶¶ 3–9.  Conclusory allegations such as these, which simply recite elements of a legal standard in vague language that does not allege LGL commits any act on its own, are not entitled to any weight on a motion to dismiss. *Panda Brandywine*, 253 F.3d at 868–69.  Moreover, the undisputed facts in LGL's evidence, including a

sworn declaration, show that these broad, conclusory allegations are wholly unsupported.

In sum, in no way has LGL purposefully availed itself of the jurisdiction of the Eastern District of Texas, or the United States generally, under any recognized version of the "stream of commerce" test. "Carried to its logical conclusion, [this] theory would allow the exercise of personal jurisdiction in every state, not just Texas." *Freescale Semiconductor, Inc. v. Amtran Tech. Co.*, No. A-12-CV-644-LY, 2014 WL 1603665, at *5–6 (W.D. Tex. Mar. 19, 2014) (holding that an overriding interest in serving the U.S. marketplace as a whole does not purposefully avail oneself of Texas). Yet here, unlike with MediaTek in *Freescale*, LGL is a holding company and does not make anything. The district court's decision exercising personal jurisdiction over LGL under the "stream of commerce" theory is indisputably wrong. The recent, growing, and conflicting body of authority from the Eastern District of Texas should be reversed.

### 2. The district court's decision that Rule 4(k)(2) supplies the Eastern District of Texas personal jurisdiction over LGL is indisputably wrong.

Rule 4(k)(2) is "just a procedural rule about issuing summonses" and "is expressly subservient to the constitutional limits of due process." *Douglass v. Nippon Yusen Kabaushiki Kaisha*, 46 F.4th 226, 233–34 (5th Cir. 2022) (en banc). Thus, it "remains subject to the constitutional question whether a defendant is

amenable to jurisdiction." *Id.* at 234. UCT alleged specific personal jurisdiction under a stream of commerce theory because LGL purportedly acts in concert with its subsidiaries to deliver products into the United States market. *Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd.*, No. 2:23-cv-449-JRG, Dkt. No. 23 at 16–17 (E.D. Tex. June 7, 2024). When considering a "stream of commerce" theory of personal jurisdiction under Rule 4(k)(2), it "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018).

The district court also held, in the alternative, that it has personal jurisdiction over LGL pursuant to Federal Rule of Civil Procedure 4(k)(2). Appx10–12. The third prong of Rule 4(k)(2) requires that the court's exercise of personal jurisdiction comports with due process based on LGL's contacts with the entire United States, as opposed to Texas. Appx11 (citing *Synthes (U.S.A.) v. G.M. Dos. Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1290 (Fed. Cir. 2009)). In finding that prong satisfied, the court relied on its prior conclusion that the court "has personal jurisdiction over LGL based on its contacts with Texas" to conclude that "it has personal jurisdiction over LGL based on its contacts directed to the United States at large" "under the stream of commerce theory." Appx11.

The district court's conclusion was also indisputably wrong. For the reasons stated above, LGL did not place anything into the stream of commerce (*see supra*) and the district court did not piece the corporate veil to warrant imputing the acts of LGL's indirect subsidiaries to LGL. The undisputed facts show that LGL does not create any product or place any product into the stream of commerce that reaches the United States.

## CONCLUSION

The Court should grant LGL's petition, vacate the district court's order, and dismiss the case for lack of personal jurisdiction.

Date: December 11, 2024                    Respectfully submitted,

                                           /s/ *Jacob A. Schroeder*
                                           JACOB A. SCHROEDER
                                           FINNEGAN, HENDERSON, FARABOW,
                                             GARRETT & DUNNER, LLP
                                           3300 HILLVIEW AVENUE
                                           PALO ALTO, CA 94304-1203
                                           (650) 849-6600

                                           LI ZHANG
                                           FINNEGAN, HENDERSON, FARABOW,
                                             GARRETT & DUNNER, LLP
                                           TWO SEAPORT LANE
                                           BOSTON, MA 02210-2001
                                           (617) 646-1600

                                           *Counsel for Petitioner,*
                                           *Lenovo Group Limited*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on December 11, 2024.

I further certify that I caused a paper copy of this document to be served upon lead counsel for respondent Universal Connectivity Technologies, Inc. at the following address via Federal Express:

> Brett Cooper
> BC LAW GROUP, P.C.
> 200 Madison Avenue, 24th Floor
> New York, NY 10016

I further certify that I caused a paper copy of this document to be served upon the presiding district court judge at the following address via Federal Express:

> Hon. Rodney Gilstrap
> United States District Court for the Eastern District of Texas
> Sam B. Hall, Jr. Federal Building and United States Courthouse
> 100 East Houston Street
> Marshall, Texas 75670

| | |
|---|---|
| Jacob A. Schroeder | /s/ Jacob A. Schroeder |
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Firm: | Finnegan, Henderson, Farabow, Garrett & Dunner, LLP |
| Address: | 3300 Hillview Avenue |
| City, State, and Zip: | Palo Alto, CA  94304 |
| Telephone: | 650-849-6765 |
| Fax #: | 202-408-4000 |
| E-Mail address: | jacob.schroeder@finnegan.com |

## CERTIFICATE OF COMPLIANCE

1.      This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1) because the body of the petition contains 7,779 words, excluding the portions exempted by the rules.

2.      This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14 point font, Times New Roman.

Jacob A. Schroeder                        /s/ *Jacob A. Schroeder*
Name of Counsel                           Signature of Counsel

Firm:                  Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Address:               3300 Hillview Avenue
City, State, and Zip:  Palo Alto, CA  94304
Telephone:             650-849-6765
Fax #:                 202-408-4000
E-Mail address:        jacob.schroeder@finnegan.com

No. _____

IN THE

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

IN RE LENOVO GROUP LIMITED,
*Petitioner*

On Petition for a Writ of Mandamus to the
United States District Court for the Eastern District of Texas,
Case No. 2:23-cv-00449
Chief Judge Rodney Gilstrap

## APPENDIX TO PETITION FOR A WRIT OF MANDAMUS

JACOB SCHROEDER
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
3300 HILLVIEW AVENUE
PALO ALTO, CA 94304-1203
(650) 849-6600

LI ZHANG
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
TWO SEAPORT LANE
BOSTON, MA 02210-2001
(617) 646-1600

December 11, 2024

*Counsel for Petitioner,*
*Lenovo Group Limited*

# TABLE OF CONTENTS

**Page**

**Document**

Memorandum Opinion and Order
    ECF No. 47, filed October 17, 2024 ........................................................Appx1

Complaint for Patent Infringement
    ECF No. 1, filed September 28, 2023....................................................Appx13

Declaration of Adrian Chim
    ECF No. 18-1, filed May 17, 2024 ........................................................Appx49

Chim Declaration Ex. A
    ECF No. 18-2, filed May 17, 2024 ........................................................Appx53

Chim Declaration Ex. B
    ECF No. 18-3, filed May 17, 2024 ........................................................Appx55

Chim Declaration Ex. C
    ECF No. 18-4, filed May 17, 2024 ........................................................Appx57

Exhibit 1 to Lenovo's Reply in Support of Its Motion to Dismiss for
    Lack of Personal Jurisdiction
    ECF No. 28-2, filed June 14, 2024 ........................................................Appx59

Exhibit 2 to Lenovo's Reply in Support of Its Motion to Dismiss for
    Lack of Personal Jurisdiction
    ECF No. 28-1, filed June 14, 2024 ........................................................Appx63

Order on UCT's Motion to Compel
    ECF No. 44, filed October 2, 2024........................................................Appx69

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| UNIVERSAL CONNECTIVITY TECHNOLOGIES INC., | § § § | |
| *Plaintiff*, | § § | |
| | § | CIVIL ACTION NO. 2:23-CV-00449-JRG |
| v. | § § | |
| LENOVO GROUP LIMITED, | § § | |
| *Defendant*. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Lenovo Group Limited's ("LGL") Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion"). (Dkt. No. 18.) Having considered the Motion, the subsequent briefing, and for the reasons stated herein, the Court finds that the Motion should be **DENIED**.

## I. BACKGROUND

Plaintiff Universal Connectivity Technologies Inc. ("UCT") filed suit on September 28, 2023, alleging that LGL infringes eight United States patents. (Dkt. No. 1 ¶ 1.) UCT asserts that some of LGL's Lenovo-branded laptops, desktops, monitors, and docking stations infringe the asserted patents. (*Id.* ¶ 15.) LGL is a Chinese company with its principal place of business in Hong Kong. (Dkt. No. 1 ¶ 3; Dkt. No. 18 at 3, 5.) Lenovo (United States) Inc. ("Lenovo US") and Lenovo Global Technology (United States) Inc. ("Lenovo Tech.") are wholly owned subsidiaries of LGL. (Dkt. No. 1 ¶¶ 5-7; *see also* Dkt. No. 18 at 3.) Lenovo US and Lenovo Tech are headquartered in Morrisville, North Carolina. (Dkt. No. 1 ¶¶ 5-7.)

LGL moves to dismiss UCT's Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

## II.     LEGAL STANDARD

### A.     Specific Personal Jurisdiction

"Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant." *Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471, 476 (E.D. Tex. 2019). Where a claim involves substantive questions of patent law, the Court applies Federal Circuit law to evaluate personal jurisdiction. *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017). However, the Fifth Circuit relies on the same analysis as the Federal Circuit in deciding whether personal jurisdiction exists. *Packless Metal Hose, Inc. v. Extek Energy Equip. (Zhejiang) Co.*, 2011 WL 504048, at *1 n.1 (E.D. Tex. Feb. 10, 2011).

Personal jurisdiction exists over a defendant where a forum state's long-arm statute permits service of process and where assertion of personal jurisdiction does not violate due process. *NexLearn*, 859 F.3d at 1375. Due to Texas's long-arm statute being "coextensive with the Due Process Clause of the Fourteenth Amendment, the two inquiries merge." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). To satisfy due process, a defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). "The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). The plaintiff bears the burden to show that the defendant has minimum contacts with the forum under the first two prongs. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). Upon a showing of minimum contacts, the

defendant bears the burden to prove unreasonableness. *Id.* In rare circumstances, a defendant may defeat the exercise of personal jurisdiction by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

The minimum contacts test is satisfied if a defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)). The existence of an "established distribution channel into the forum" is a "significant factor" when evaluating the strength of a non-movant's stream of commerce theory. *See id.* at 1565 n.15. The Supreme Court has, however, introduced a split of authority as to what is required to establish minimum contacts under a stream of commerce theory. The Federal Circuit has repeatedly refused to endorse either articulation of the stream of commerce theory. *See, e.g., id.* at 1566 ("We need not join this debate here, since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing."); *see also AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1364 (Fed. Cir. 2012) ("Thus, *Beverly Hills Fan* counsels that we refrain from taking a position on the proper articulation of the stream-of-commerce theory where the facts of a particular case mandate exercising or declining to exercise personal jurisdiction under any articulation of that theory."). Instead, the Federal Circuit's approach is to determine whether the plaintiff can establish minimum contacts—or has failed to establish minimum contacts—under both theories, making the choice between theories unnecessary. *AFTG-TG*, 689 F.3d at 1364. The Federal Circuit has explained that defendants fall under the stream of commerce theory where "defendants, *acting in consort*, placed the accused [product] in the stream of commerce, they knew the likely

3

**Appx3**

destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Beverly Hills Fan*, 21 F.3d at 1566 (emphasis added).

"When the district court's determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff usually bears only a prima facie burden." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). "To make that showing, [the plaintiff] need only demonstrate facts that, if true, would support jurisdiction over the Defendants." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008). "Unless directly contravened, [the plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Id.*

### B. Personal Jurisdiction Under Rule 4(k)(2)

Personal jurisdiction may exist under Rule 4(k)(2) where "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). A court may exercise jurisdiction under Rule 4(k)(2) if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Come de Equip. Medico*, 563 F.3d 1285, 1293-94 (Fed. Cir. 2009)). The three-step due process analysis under specific jurisdiction and Rule 4(k)(2) are similar. *Id.* However, Rule 4(k)(2) "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Id.* (quoting *Synthes*, 563 F.3d at 1295).

## III.   DISCUSSION

### A.   Specific Jurisdiction[1]

#### 1.   LGL has Sufficient Minimum Contacts with Texas

LGL argues that the Court lacks personal jurisdiction because LGL does not direct any activities at Texas. (Dkt. No. 18 at 6.) LGL argues that it is merely a holding company that does not place anything into the stream of commerce. (*Id.* at 7-9.) LGL further argues that it does not control its subsidiaries' activities concerning the accused products. (*Id.* at 8-10.) LGL contends that its actions are typical of a parent holding company that oversees the strategy of its subsidiaries. (*Id.* at 7-10.) LGL argues that the Court should not depart from controlling law rejecting personal jurisdiction over a parent company based on actions of subsidiaries because "corporate formalities are not mere niceties that can be ignored in the personal jurisdiction analysis." (Dkt. No. 28 at 5; *see also* Dkt. No. 18 at 8-9.)

In support of its Motion, LGL attached a declaration from Adrian Chim, Director of Group Financial Reporting and Accounting Policy at Lenovo Hong Kong Services Limited (the "Chim Declaration"). (Dkt. No. 18-1.) The Chim Declaration states that LGL is a holding company that "does not itself manufacture, sell, offer for sale, export, import, or otherwise distribute any Lenovo-branded products" and does not "itself distribute any Lenovo-branded products through established distribution channels." (Dkt. No. 18-1 ¶ 3.) The Chim Declaration admits that Lenovo US, LGL's wholly owned subsidiary, "is the entity responsible for selling Lenovo-branded products in the United States." (*Id.* ¶ 6.) LGL contends that UCT's allegations that LGL controls its subsidiaries' activities concerning the accused products are "entirely conclusory and . . . contradicted by the Chim Declaration." (Dkt. No. 18 at 9.)

---

[1] Here, general jurisdiction is not at issue. Therefore, the Court's analysis is limited to whether LGL is subject to specific jurisdiction in Texas.

UCT counters in its response that the Complaint contains specific allegations that LGL's subsidiaries manufacture and/or import LGL products into the United States, including Texas. (Dkt. No. 23 at 5-6 (citing Dkt. No. 1 ¶¶ 3-4, 9).) UCT alleges that LGL uses its subsidiaries, including Lenovo US and Lenovo Tech, to "make, use, import, offer to sell, and/or sell the LGL Accused Products in the United States and specifically in Texas . . . ." (*Id.* (citing Dkt. No. 1 ¶ 8).) UCT asserts that Lenovo US and Lenovo Tech are registered to do business in Texas. (*Id.* (citing Dkt. No. 1 ¶¶ 6-7).) UCT presents evidence that LGL portrays itself and its subsidiaries as a single company. (Dkt. No. 31 at 2 (citing Dkt. No. 31-2).) UCT presents additional evidence that a factual conflict exists concerning whether LGL shares its management-level employees with its US-based subsidiaries. (Dkt. No. 23 at 8-9.) Further, UCT identified locations of authorized sellers and sales representatives that sell, or at least offer for sale, the accused products in Texas. (*Id.* at 7 (citing Dkt. No. 1 ¶ 4).)

Viewing UCT's allegations as true and the factual conflicts in UCT's favor, the Court finds that UCT has made a *prima facie* showing of specific jurisdiction in Texas. UCT's Complaint alleges that LGL at least acts in concert with its wholly owned subsidiaries to deliver the accused products into the Texas market under a stream of commerce theory. UCT alleges that LGL's distribution channel—comprising its wholly owned subsidiaries—is arranged in a way that LGL "knew, or reasonably could have foreseen, that a termination point of the channel" was Texas. *Beverly Hills*, 21 F.3d at 1564. LGL's status as a holding company does not remove it from this Court's personal jurisdiction. *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 779 (5th Cir. 2018).

LGL attempts to use the Chim Declaration to detach LGL from its subsidiaries. (*See generally* Dkt. 18-1.) However, the Chim Declaration fails to rebut all UCT's allegations and

6

**Appx6**

supporting evidence. For example, Mr. Chim is the Director of Group Financial Reporting and Accounting Policy at Lenovo Hong Kong Services Limited, not LGL. (Dkt. No. 18-1 ¶ 1.) The fact that Mr. Chim opines on the relationship between LGL and its subsidiaries as an employee of an LGL subsidiary indicates that there is at least some degree of lack of separateness between LGL and its subsidiaries. As another example, the Chim Declaration contends that LGL has no employees or place of business in the United States. (Dkt. No. 18-1 ¶ 3.) However, UCT presents evidence that LGL has employees living and working in the United States, including in Texas. (Dkt. No. 23 at 8-9.) To the extent the Chim Declaration conflicts with well-pleaded allegations in the Complaint, the Court must view the well-pleaded allegations in the light most favorable to UCT. *See Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (courts "must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the nonmoving party").

Throughout its Motion, LGL argues that courts in other districts have already addressed the issue of personal jurisdiction over LGL, holding that LGL is not subject to personal jurisdiction in those districts under either an agency or stream of commerce theory. (*E.g.*, Dkt. No. 18 at 7.) However, the Court does not find those authorities persuasive in this case. Here, as discussed above, there are open factual disputes as to whether LGL created, controls, or directs its subsidiaries to place the allegedly infringing products into the stream of commerce in Texas.

Instead, the Court finds the decisions of other Texas district courts, including another court in this district, more persuasive. In those cases, the courts found jurisdiction over LGL based on its conduct related to some of the same accused products and based on similar evidence and reasoning. *See AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-cv-280-RWS-RSP, 2023 WL 7105701 (E.D. Tex. Sept. 6, 2023), *report and recommendation adopted*, No. 2:22-cv-280-RWS-RSP, Dkt. No. 119 (E.D. Tex. Sept. 26, 2023) and *ACQIS LLC v. Lenovo Grp. Ltd.*, 572 F. Supp.

Appx7

3d 291 (W.D. Tex. 2021). In both those cases, this district and the Western District of Texas rejected many of the same arguments that LGL presents here. This district found to that the plaintiff made a *prima facie* showing of personal jurisdiction under a stream of commerce theory by acting in consort with its subsidiaries to deliver the accused products into the United States market, including Texas. *AX Wireless*, 2023 WL 7105701, at *3-5 (Magistrate Payne recommending denying the defendant's motion to dismiss because the plaintiff established a *prima facie* case under a stream of commerce theory); *see also AX Wireless*, No. 2:22-cv-280-RWS-RSP, Dkt. No. 119 at 6-10 (Judge Schroeder adopting Judge Payne's recommendation).[2] The Western District of Texas also found that there was sufficient evidence to support personal jurisdiction over LGL based on LGL's contacts and purposeful availment under a stream of commerce theory. *ACQIS*, 572 F. Supp. 3d, 306.[3]

LGL chose to conduct business in Texas through its subsidiaries. LGL uses its multi-level corporate structure to place the accused products into the stream of commerce—resulting in the accused products being sold or offered for sale in Texas. LGL cannot now claim a due process violation when Texas courts exercise jurisdiction over it for claims arising from or relating to these sales.[4]

## 2. UCT's Claims Arise from or Relate to LGL's Texas Contacts

LGL argues that UCT's claims do not arise out of or relate to LGL's Texas contacts because LGL does not direct any activities at Texas. (Dkt. No. 18 at 7-8.) UCT's infringement claims arise from LGL "making, using, offering for sale, selling and/or importing into the United States the

---

[2] In the alternative, Magistrate Payne also found personal jurisdiction proper under Rule 4(k)(2).
[3] The Western District of Texas also found that, in the alternative, the purposeful contacts by the other defendants— LGL subsidiaries, including Lenovo US—are imputable to LGL. *Id.* at 306-07.
[4] Because the Court finds personal jurisdiction under the stream of commerce theory proper, the Court need not address UCT's other theories, including whether the Court can properly impute the contacts from LGL's subsidiaries to LGL because they serve as LGL's distribution agents.

Accused Products." (*E.g.*, Dkt. No. 1 ¶¶ 11, 12, 20, 31, 42, 53, 64, 74, 84, 94.) LGL, directly or indirectly, places the accused products into the stream of commerce throughout the United States, including Texas. Accordingly, UCT's claims for patent infringement arise from or relate to LGL's contacts with Texas.

### 3. The Exercise of Jurisdiction is Reasonable and Fair

To evaluate whether the exercise of personal jurisdiction is reasonable and fair, the Court weighs five factors: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering substantive social policies. *Patent Rts. Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010) (citing *Burger King*, 471 U.S. at 476-77). "When a defendant seeks to rely on the 'fair play and substantial justice' factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant, 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Nuance*, 626 F.3d at 1231 (citing *Burger King*, 471 U.S. at 477).

Under the first factor, LGL argues that "requiring LGL to litigate in Texas would be severe and unreasonable" because LGL is a holding company, does not conduct business in Texas, and is headquartered in Hong Kong. (Dkt. No. 18 at 16.) As to the remaining factors, LGL argues that Texas has no interest in resolving the present dispute because neither party has any Texas ties.[5] (Dkt. No. 18 at 17.) LGL also contends that exercising jurisdiction would not result in efficiency and no interest would be served because UCT's claims are not viable. (*Id.*)

---

[5] LGL also argues that UCT's allegations are directed at Lenovo US, who is properly subject to suit in other venues that have a more particularized local interest in this case. (Dkt. No. 18 at 17.) However, LGL has not moved to dismiss this case for improper venue. LGL's Motion is limited to lack of personal jurisdiction. (*See generally id.*)

The Court finds that while LGL may be slightly burdened by defending in a foreign forum, "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *Synthes*, 563 F.3d at 1299 (citing *World-Wide Volkswagen*, 444 U.S. at 294). The second, third, and fourth factors further favor jurisdiction because both Texas and the United States have an interest in enforcing federal patent laws and providing UCT a forum to efficiently pursue its claims for patent infringement and for the parties to efficiently resolve their disputes. *See id.* ("The United States also has an interest in discouraging injuries that occur within its boundaries, including injuries resulting from patent infringement."). As to the fifth factor, the United States and Texas have an interest in furthering their social policies to discourage patent infringement.

Accordingly, the Court finds that the exercise of personal jurisdiction over LGL is both reasonable and fair.

**B.     Rule 4(k)(2)**

Alternatively, the Court also has personal jurisdiction over LGL pursuant to Rule 4(k)(2). LGL argues that Rule 4(k)(2) does not provide an alternative basis for personal jurisdiction because LGL does not conduct business in the United States. (Dkt. No. 18 at 18.) In response, UCT argues that LGL delivers the allegedly infringing products into the stream of commerce with the expectation that they will be purchased in the United States. (Dkt. No. 23 at 17.)

**1.     UCT's Patent Infringement Claims Arise Under Federal Law**

The first prong of Rule 4(k)(2) requires that the claim against the defendant arises under federal law. *Synthes*, 563 F.3d at 1290. It is undisputed that federal patent law governs UCT's patent infringement allegations. 28 U.S.C. § 1338; *Synthes*, 563 F.3d at 1296 ("The claim of patent infringement presents a federal question"). Therefore, the first prong of Rule 4(k)(2) is satisfied.

### 2. LGL Contends it is Not Subject to Personal Jurisdiction in any United States Forum

The second prong of Rule 4(k)(2) requires that the defendant is not subject to the personal jurisdiction of any state court of general jurisdiction. *Synthes*, 563 F.3d at 1290. If the defendant "contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Merial, Ltd. v. Cipla, Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012). Therefore, a defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. *Id.*

Here, LGL contends that it cannot be sued in Texas. (Dkt. No. 18 at 6-15.) However, LGL does not name any other state where the suit could proceed. (*See generally id.*) Therefore, the second prong of Rule 4(k)(2) is satisfied.

### 3. The Court's Exercise of Personal Jurisdiction Comports with Due Process

The third prong of Rule 4(k)(2) requires that the Court's exercise of personal jurisdiction comports with due process. *Synthes*, 563 F.3d at 1290. This analysis "contemplates a defendant's contacts with the ***entire United States***, as opposed to the state in which the district court sits." *Id.* at 1295 (emphasis added). To determine whether a defendant has minimum contacts, the court considers whether "(1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to the defendant's activities with the forum; and (3) assertion of personal jurisdiction is reasonable and fair." *M-I Drilling*, 890 F.3d at 1000. Thus, Rule 4(k)(2) serves as a federal long-arm statute. *Id.* at 1296.

Here, given that the Court has already concluded that it has personal jurisdiction over LGL based on its contacts with Texas, the Court also finds that it has personal jurisdiction over LGL based on its contacts directed to the United States at large. LGL has sufficient minimum contacts with the United States under the stream of commerce theory. (*See supra* Section III.A.1.) UCT's

claims arise out of or related to LGL's activities in the United States. (*See supra* Section III.A.2.)

Finally, the Court's assertion of personal jurisdiction over LGL is reasonable and fair. (*See supra*

Section III.A.3.)

Accordingly, in the alternative, the Court finds that it has personal jurisdiction over LGL

under Rule 4(k)(2).

## IV.    CONCLUSION

Having considered the Motion, the Court finds that it should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 16th day of October, 2024.**

RODNEY  GILSTRAP
UNITED  STATES  DISTRICT  JUDGE

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| UNIVERSAL CONNECTIVITY TECHNOLOGIES INC., | |
| Plaintiff, | Case No. 2:23-cv-449 |
| v. | **JURY TRIAL DEMANDED** |
| LENOVO GROUP LIMITED, | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT
## AGAINST LENOVO GROUP LIMITED

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff Universal Connectivity Technologies Inc. ("Plaintiff") makes the following allegations against Defendant Lenovo Group Limited ("Defendant" or "Lenovo"):

## INTRODUCTION

1.      This complaint arises from Lenovo's unlawful infringement of the following United States patents owned by Plaintiff: United States Patent Nos. 7,154,905 ("the '905 Patent"), 7,187,307 ("the '307 Patent"), 7,746,798 ("the '798 Patent"), 9,232,265 ("the '265 Patent"), 8,680,712 ("the '712 Patent"), 7,856,520 ("the '520 Patent"), 7,921,231 ("the '231 Patent"), and 9,852,103 ("the '103 Patent") (collectively, the "Asserted Patents").

## PARTIES

2.      Plaintiff Universal Connectivity Technologies Inc. ("UCT") is a Delaware corporation, with its principal place of business at 1891 Robertson Road, Suite 100, Ottawa, ON K2H 5B7, Canada.  UCT is a wholly-owned subsidiary of Wi-LAN Technologies Inc., which is a

wholly-owned subsidiary of Wi-LAN Inc. ("WiLAN") and is a Canadian corporation with a principal place of business at 1891 Robertson Road, Suite 100, Ottawa, ON K2H 5B7, Canada. UCT is the sole owner by assignment of all right, title, and interest in the Asserted Patents, including the right to recover for past, present, and future infringement.

3.      Defendant Lenovo Group Limited is a foreign company organized and existing under the laws of China, with its headquarters at 23rd Floor, Lincoln House, Taikoo Place, 979 King's Road, Quarry Bay, Hong Kong S.A.R. of China.  Lenovo does business in Texas and in the Eastern District of Texas, directly or through intermediaries, such as its wholly-owned subsidiaries.  Lenovo is responsible for importing, making, marketing, distributing, offering for sale, and/or selling Lenovo-branded laptops, desktops, monitors, docking stations, and adapters in the United States (directly or through its wholly-owned subsidiaries), including in this District.

4.      Lenovo induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, infringing products (such as Lenovo-branded laptops, desktops, monitors, docking stations, and adapters) and placing such products into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used in the United States, including in the Eastern District of Texas.  Lenovo purposefully directs the Accused Products into established distribution channels within this District and the U.S. nationally.  For example, Lenovo sells and offers to sell the Accused Products through its website, Lenovo.com, which may be accessed throughout the United States, the State of Texas, and this District.  Additionally, Lenovo has authorized sellers and sales representatives that offer for sale and sell the Accused Products throughout the State of Texas and to consumers throughout this District, such as:  Best Buy, 422 West Loop 281, Suite 100, Longview, Texas 75605; Costco

Wholesale, 3650 West University Drive, McKinney, Texas 75071; Office Depot, 422 West Loop

281, Suite 300, Longview, Texas 75605; Target, 3092 North Eastman Road, Suite 100, Longview,

Texas 75605; and Wal-Mart, 1701 East End Boulevard North, Marshall, Texas 75670.

5.     Lenovo maintains a corporate presence in the United States via at least its wholly-

owned subsidiaries, including Lenovo (United States) Inc. ("Lenovo US") and Lenovo Global

Technology (United States) Inc. ("Lenovo Tech.").

6.     Lenovo US is a corporation organized and existing under the laws of Delaware,

with a corporate headquarters located at 1009 Think Place, Morrisville, NC 27560.  Lenovo US is

registered to do business in the State of Texas and may be served through CT Corporation System,

1999 Bryan St., Ste. 900, Dallas, TX 75201.

7.     Lenovo Tech. is a corporation organized and existing under the laws of Delaware,

with a corporate headquarters located at 1009 Think Place, Morrisville, NC 27560.  Lenovo Tech.

is registered to do business in the State of Texas and may be served through CT Corporation

System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

8.     Lenovo and its U.S.-based subsidiaries (which act as part of a global network of

sales and manufacturing subsidiaries) operate as agents of one another and vicariously as parts of

the same business group to work in concert together.  For example, in its 2022/23 Annual Report,

Lenovo describes itself and its subsidiaries as follows:

> Lenovo Group Limited (the "Company") and its subsidiaries (together, the "Group") develop, manufacture and market reliable, high-quality, secure and easy-to-use technology products and services. Its product lines include legendary Think-branded commercial personal computers and Idea-branded consumer personal computers, as well as servers, workstations, and a family of mobile internet devices, including tablets and smartphones.

Ex. 1 at 192 (https://investor.lenovo.com//en/publications/reports.php).  Lenovo identifies U.S.-

based subsidiaries (including but not limited to Lenovo US and Lenovo Tech.) in its list of

"principal subsidiaries."  *Id.* at 279, 281.  Lenovo describes its "principal subsidiaries" as follows:

> The following includes the principal subsidiaries directly or indirectly held by the Company and, in the opinion of the directors, are significant to the results of the year or form a substantial portion of the net assets of the Group. The directors consider that giving details of other subsidiaries would result in particulars of excessive length.

*Id.* at 276.  Lenovo identifies its 2023 "percentage of issued share capital held" for Lenovo US and Lenovo Tech. as "100%."  *Id.* at 279, 281.  Further, Lenovo identifies the "principal activities" for Lenovo US as "[d]istribution of IT products" and the "principal activities" for Lenovo Tech. as "[p]rovision of IT services and distribution of IT products."  *Id.*  As such, Lenovo US and Lenovo Tech. are agents of Lenovo.  At the direction and control of Lenovo, U.S.-based subsidiaries (including but not limited to Lenovo US and Lenovo Tech.) make, use, import, offer to sell, and/or sell Lenovo-branded laptops, desktops, monitors, docking stations, and adapters that infringe the Asserted Patents, including in the State of Texas and this District.

9.      Lenovo, alone and through its U.S.-based subsidiaries (such as Lenovo US and Lenovo Tech.), places such infringing products into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used in the United States, including in the Eastern District of Texas.  Lenovo has derived substantial revenue from infringing acts in the United States, including from the sale and use of infringing products.  *See* Ex. 1 at 225 (showing revenues for "Americas") (https://investor.lenovo.com//en/publications/reports.php).

## JURISDICTION AND VENUE

10.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.      This Court has personal jurisdiction over Lenovo in this action because Lenovo has committed acts within Texas (and this District) giving rise to this action and has established

minimum contacts with this forum such that the exercise of jurisdiction over Lenovo would not offend traditional notions of fair play and substantial justice.  Lenovo, directly and/or through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, making, using, importing, offering to sell, and/or selling products that infringe the Asserted Patents.  Courts in Texas have concluded that Lenovo is subject to personal jurisdiction in the State of Texas.  *See ACQIS LLC v. Lenovo Grp. Ltd.*, 572 F. Supp. 3d 291, 307 (W.D. Tex. 2021) ("this Court finds that the exercise of personal jurisdiction over [Lenovo Group Limited] is both reasonable and fair."); *see also AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-cv-00280-RWS-RSP, Dkt. No. 110 (report and recommendation) (E.D. Tex. Sept. 6, 2023) ("exercising personal jurisdiction [over Lenovo Grp. Ltd.] would not offend traditional notions of fair place and substantial justice.").

12.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b).  Lenovo, directly and/or through subsidiaries or intermediaries, has transacted business in this District and has committed acts of direct infringement in this District by, among other things, making, using, offering to sell, selling, and importing products that infringe the Asserted Patents.  Venue is also proper as to Lenovo because it is a foreign corporation organized under the laws of China and suits against foreign entities are proper in any judicial district.  *See* 28 U.S.C. § 1391(c)(3); *In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018).

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 7,154,905

13.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

14.     Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 7,154,905, titled "Method and system for nesting of communications packets."  The '905 Patent was duly and legally issued by the United States Patent and Trademark Office on December 26, 2006.  A true and correct copy of the '905 Patent is attached as Exhibit 2.

15.     On information and belief, Lenovo has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation Lenovo products (laptops, desktops, monitors, and docking stations) that support DisplayPort 1.2 or later, such as the Qreator 27 UHD Smart Crystal Sound Wireless Charging Monitor, ThinkCentre M75s Gen 2 Small Form Factor Desktop, ThinkPad USB-C Dock Gen 2 Docking Station, and Legion 7 Gen 6 & 7 Gaming Laptop ("Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '905 Patent.  Identification of the Accused Products will be provided in Plaintiff's infringement contentions disclosed pursuant to the Court's scheduling order.  Plaintiff's identification of the Accused Products is not intended to accuse products where the infringement accusations are directed at products that are licensed by the license between Intel Corporation and WiLAN.

16.     The Accused Products satisfy all claim limitations of one or more claims of the '905 Patent.  A claim chart comparing exemplary independent claim 21 of the '905 Patent to representative Accused Products is attached as Exhibit 3.

17.     On June 30, 2022, WiLAN sent Lenovo a letter indicating that certain Lenovo products infringe at least claim 21 of the '905 Patent and proposed times to discuss a potential license from UCT to practice the '905 Patent.  Ex. 4.  On July 11, 2022, Lenovo's licensing department confirmed receipt of the June 30 letter and indicated that it "would be happy to engage

**Appx18**

in discussions" with WiLAN regarding a potential license.  Ex. 5.  Thereafter, WiLAN and Lenovo exchanged various emails and held numerous calls to discuss the UCT patents (including substantive discussions regarding the alleged infringement and validity of the patents), including calls on July 26, 2022, November 1, 2022, November 8, 2022, November 29, 2022, December 20, 2022, January 24, 2023, January 31, 2023, February 14, 2023, and March 7, 2023.  After extensive discussions between the parties, Lenovo ultimately declined to take a license, or even hear UCT's offer for a license, on a call held on March 30, 2023.

18.     Lenovo knowingly and intentionally induces infringement of one or more claims of the '905 Patent in violation of 35 U.S.C. § 271(b).  As of at least July 11, 2022, Lenovo has knowledge of the '905 Patent and the infringing nature of the Accused Products.  Despite this knowledge of the '905 Patent, Lenovo continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 3) to use the Accused Products in ways that directly infringe the '905 Patent.  For example, Lenovo advertises that its products are compatible with DisplayPort.  *See, e.g.*, https://www.lenovo.com/us/en/p/desktops/thinkcentre/m-series-sff/thinkcentre-m75s-gen-2/11tc1mdm75s?orgRef=https%253A%252F%252Fwww.google.com%252F#tech_specs (ThinkCenter M75s Gen 2 Small Form Factor Desktop – Product Specification); https://www.lenovo.com/us/en/p/laptops/legion-laptops/legion-7-series/legion-7-gen-6-(16-inch-amd)/len101g0011?orgRef=https%253A%252F%252Fwww.google.com%252F (Legion 7 Gen 6 Gaming Laptop – Product Specification).  Lenovo also instructs its customers and end users on how to use the Accused Products in an infringing manner, including through the use of DisplayPort.                                                *See,                                                e.g.*, https://download.lenovo.com/pccbbs/thinkcentre_pdf/m75s_gen2_ug_en.pdf (ThinkCenter M75s

Gen 2 Small Form Factor Desktop – User Manual);
https://download.lenovo.com/pccbbs/pubs/legion_7_16_6/html_en/index.html#t=EN%2Fcover.h
tml (Legion 7 Gen 6 Gaming Laptop – User Manual).  Lenovo provides these instructions and
materials knowing and intending (or with willful blindness to the fact) that its customers and end
users will commit these infringing acts.  Lenovo also continues to make, use, offer for sale, sell,
and/or import the Accused Products, despite its knowledge of the '905 Patent, thereby specifically
intending for and inducing its customers to infringe the '905 Patent through the customers' normal
and customary use of the Accused Products.

19.     Lenovo has also infringed, and continues to infringe, one or more claims of the '905
Patent by selling, offering for sale, or importing into the United States, the Accused Products,
knowing that the Accused Products constitute a material part of the inventions claimed in the '905
Patent, are especially made or adapted to infringe the '905 Patent, and are not staple articles or
commodities of commerce suitable for non-infringing use.  As of at least July 11, 2022, Lenovo
has knowledge of the '905 Patent and the infringing nature of the Accused Products.  Lenovo has
been, and currently is, contributorily infringing the '905 Patent in violation of 35 U.S.C. §§ 271(c)
and/or (f).  For example, the identified hardware and/or software components in Lenovo's laptops,
desktops, monitors, and docking stations that support DisplayPort 1.2 constitute a material part of
the inventions claimed in the '905 Patent, are especially made or adapted to infringe the '905
Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as
demonstrated by the evidence cited above and in Exhibit 3.

20.     By making, using, offering for sale, selling and/or importing into the United States
the Accused Products, Lenovo has injured Plaintiff and is liable for infringement of the '905 Patent
pursuant to 35 U.S.C. § 271.

21.     On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, its predecessors, and any licensees did not make, offer for sale, or sell products that practice(d) the '905 Patent during the relevant time period or were not required to mark during the relevant time period.

22.     As described above, Lenovo obtained knowledge of the '905 Patent and that certain products infringe the '905 Patent as of at least July 11, 2022, but has not ceased its infringing activities.  Lenovo's infringement of the '905 Patent has been and continues to be willful and deliberate.  Lenovo also has knowledge of the '905 Patent by way of this complaint and, to the extent they do not cease their infringing activities, their infringement is and continues to be willful and deliberate.

23.     As a result of Lenovo's direct and indirect infringement of the '905 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 7,187,307

24.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

25.     Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 7,187,307, titled "Method and system for encapsulation of multiple levels of communication protocol functionality within line codes."  The '307 Patent was duly and legally issued by the United States Patent and

Trademark Office on March 6, 2007.  A true and correct copy of the '307 Patent is attached as Exhibit 6.

26.     On information and belief, Lenovo has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation Lenovo products (laptops, desktops, monitors, and docking stations) that support DisplayPort Version 1.0 or later, such as the Qreator 27 UHD Smart C1ystal Sound Wireless Charging Monitor, ThinkCentre M75s Gen 2 Small Form Factor Desktop, Legion 7 Gen 6 & 7 Gaming Laptop, and ThinkPad USB-C Dock Gen 2 Docking Station ("Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '307 Patent.  Identification of the Accused Products will be provided in Plaintiff's infringement contentions disclosed pursuant to the Court's scheduling order.  Plaintiff's identification of the Accused Products is not intended to accuse products where the infringement accusations are directed at products that are licensed by the license between Intel Corporation and WiLAN.

27.     The Accused Products satisfy all claim limitations of one or more claims of the '307 Patent.  A claim chart comparing exemplary independent claim 68 of the '307 Patent to representative Accused Products is attached as Exhibit 7.

28.     On June 30, 2022, WiLAN sent Lenovo a letter indicating that certain Lenovo products infringe at least claims 53 and 68 of the '307 Patent and proposed times to discuss a potential license from UCT to practice the '307 Patent.  Ex. 4.  On July 11, 2022, Lenovo's licensing department confirmed receipt of the June 30 letter and indicated that it "would be happy to engage in discussions" with WiLAN regarding a potential license.  Ex. 5.  Thereafter, WiLAN and Lenovo exchanged various emails and held numerous calls to discuss the UCT patents (including substantive discussions regarding the alleged infringement and validity of the patents),

including calls on July 26, 2022, November 1, 2022, November 8, 2022, November 29, 2022, December 20, 2022, January 24, 2023, January 31, 2023, February 14, 2023, and March 7, 2023. After extensive discussions between the parties, Lenovo ultimately declined to take a license, or even hear UCT's offer for a license, on a call held on March 30, 2023.

29.     Lenovo knowingly and intentionally induces infringement of one or more claims of the '307 Patent in violation of 35 U.S.C. § 271(b).  As of at least July 11, 2022, Lenovo has knowledge of the '307 Patent and the infringing nature of the Accused Products.  Despite this knowledge of the '307 Patent, Lenovo continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 7) to use the Accused Products in ways that directly infringe the '307 Patent.  For example, Lenovo advertises that its products are compatible with DisplayPort.  *See, e.g.*, https://www.lenovo.com/us/en/p/desktops/thinkcentre/m-series-sff/thinkcentre-m75s-gen-2/11tc1mdm75s?orgRef=https%253A%252F%252Fwww.google.com%252F#tech_specs (ThinkCenter M75s Gen 2 Small Form Factor Desktop – Product Specification); https://www.lenovo.com/us/en/p/laptops/legion-laptops/legion-7-series/legion-7-gen-6-(16-inch-amd)/len101g0011?orgRef=https%253A%252F%252Fwww.google.com%252F (Legion 7 Gen 6 Gaming Laptop – Product Specification).  Lenovo also instructs its customers and end users on how to use the Accused Products in an infringing manner, including through the use of DisplayPort.                                    *See,                                      e.g.*, https://download.lenovo.com/pccbbs/thinkcentre_pdf/m75s_gen2_ug_en.pdf (ThinkCenter M75s Gen 2 Small Form Factor Desktop – User Manual); https://download.lenovo.com/pccbbs/pubs/legion_7_16_6/html_en/index.html#t=EN%2Fcover.html (Legion 7 Gen 6 Gaming Laptop – User Manual).  Lenovo provides these instructions and

materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts.  Lenovo also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '307 Patent, thereby specifically intending for and inducing its customers to infringe the '307 Patent through the customers' normal and customary use of the Accused Products.

30.     Lenovo has also infringed, and continues to infringe, one or more claims of the '307 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the '307 Patent, are especially made or adapted to infringe the '307 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use.  As of at least July 11, 2022, Lenovo has knowledge of the '307 Patent and the infringing nature of the Accused Products.  Lenovo has been, and currently is, contributorily infringing the '307 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f).  For example, the identified hardware and/or software components in Lenovo's laptops, desktops, monitors, and docking stations that support DisplayPort constitute a material part of the inventions claimed in the '307 Patent, are especially made or adapted to infringe the '307 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence in Exhibit 7.

31.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Lenovo has injured Plaintiff and is liable for infringement of the '307 Patent pursuant to 35 U.S.C. § 271.

32.     On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, its predecessors,

and any licensees did not make, offer for sale, or sell products that practice(d) the '307 Patent during the relevant time period or were not required to mark during the relevant time period.

33.     As described above, Lenovo obtained knowledge of the '307 Patent and that certain products infringe the '307 Patent as of at least July 11, 2022, but has not ceased its infringing activities.  Lenovo's infringement of the '307 Patent has been and continues to be willful and deliberate.  Lenovo also has knowledge of the '307 Patent by way of this complaint and, to the extent they do not cease their infringing activities, their infringement is and continues to be willful and deliberate.

34.     As a result of Lenovo's direct and indirect infringement of the '307 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 7,746,798

35.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

36.     Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 7,746,798, titled "Method and system for integrating packet type information with synchronization symbols." The '798 Patent was duly and legally issued by the United States Patent and Trademark Office on June 29, 2010.  A true and correct copy of the '798 Patent is attached as Exhibit 8.

37.     On information and belief, Lenovo has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation Lenovo products

(laptops, desktops, monitors, and docking stations) that support USB 3.0 and later, such as the ThinkVision Ml4t USB-C Mobile Monitor, ThinkStation P620 Workstation, ThinkPad T14 Gen 3 Laptop, and Legion 7 Gen 6 & 7 Gaming Laptop ("Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '798 Patent. Identification of the Accused Products will be provided in Plaintiff's infringement contentions disclosed pursuant to the Court's scheduling order.  Plaintiff's identification of the Accused Products is not intended to accuse products where the infringement accusations are directed at products that are licensed by the license between Intel Corporation and WiLAN.

38.     The Accused Products satisfy all claim limitations of one or more claims of the '798 Patent.  A claim chart comparing exemplary independent claim 19 of the '798 Patent to representative Accused Products is attached as Exhibit 9.

39.     On June 30, 2022, WiLAN sent Lenovo a letter indicating that certain Lenovo products infringe at least claim 19 of the '798 Patent and proposed times to discuss a potential license from UCT to practice the '798 Patent.  Ex. 4.  On July 11, 2022, Lenovo's licensing department confirmed receipt of the June 30 letter and indicated that it "would be happy to engage in discussions" with WiLAN regarding a potential license.  Ex. 5.  Thereafter, WiLAN and Lenovo exchanged various emails and held numerous calls to discuss the UCT patents (including substantive discussions regarding the alleged infringement and validity of the patents), including calls on July 26, 2022, November 1, 2022, November 8, 2022, November 29, 2022, December 20, 2022, January 24, 2023, January 31, 2023, February 14, 2023, and March 7, 2023.  After extensive discussions between the parties, Lenovo ultimately declined to take a license, or even hear UCT's offer for a license, on a call held on March 30, 2023.

40.     Lenovo knowingly and intentionally induces infringement of one or more claims of the '798 Patent in violation of 35 U.S.C. § 271(b).  As of at least July 11, 2022, Lenovo has knowledge of the '798 Patent and the infringing nature of the Accused Products.  Despite this knowledge of the '798 Patent, Lenovo continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 9) to use the Accused Products in ways that directly infringe the '798 Patent.  For example, Lenovo   advertises   that   its   products   are   compatible   with   USB.   *See, e.g.*, https://www.lenovo.com/us/en/p/desktops/thinkcentre/m-series-sff/thinkcentre-m75s-gen-2/11tc1mdm75s?orgRef=https%253A%252F%252Fwww.google.com%252F#tech_specs (ThinkCenter M75s Gen 2 Small Form Factor Desktop – Product Specification); https://www.lenovo.com/us/en/p/workstations/thinkstation-p-series/thinkstation-p620/wmd00000429?orgRef=https%253A%252F%252Fwww.google.com%252F&cid=us:sem|se|google|subbrand_pc_thinkstation|commercial_premium_workstation_amd_generic|thinkstation%20p620%20tower%20workstation|b|20493766441|153601625180|aud-959187040766:kwd-1285462112330|search||commercialconsumer&gclid=CjwKCAjwyNSoBhA9EiwA5aYlb1cQap-ty8e-hnPQGpkrda-BU8_gs9BFYgpcbtbAm2P2inMd01D17hoCBL4QAvD_BwE (ThinkStation P620 Workstation – Product Specification).  Lenovo also instructs its customers and end users on how to use the Accused Products in an infringing manner, including through the use of USB.  *See, e.g.*, https://download.lenovo.com/pccbbs/thinkcentre_pdf/m75s_gen2_ug_en.pdf  (ThinkCenter   M75s   Gen   2   Small   Form   Factor   Desktop   –   User   Manual); https://download.lenovo.com/pccbbs/thinkcentre_pdf/p620_ug_en.pdf   (ThinkStation   P620 Workstation – User Manual).  Lenovo provides these instructions and materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these

infringing acts.  Lenovo also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '798 Patent, thereby specifically intending for and inducing its customers to infringe the '798 Patent through the customers' normal and customary use of the Accused Products.

41.     Lenovo has also infringed, and continues to infringe, one or more claims of the '798 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the '798 Patent, are especially made or adapted to infringe the '798 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use.  As of at least July 11, 2022, Lenovo has knowledge of the '798 Patent and the infringing nature of the Accused Products.  Lenovo has been, and currently is, contributorily infringing the '798 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f).  For example, the identified hardware and/or software components in Lenovo's laptops, desktops, monitors, and docking stations that support USB 3.0 and later constitute a material part of the inventions claimed in the '798 Patent, are especially made or adapted to infringe the '798 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence in Exhibit 9.

42.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Lenovo has injured Plaintiff and is liable for infringement of the '798 Patent pursuant to 35 U.S.C. § 271.

43.     On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, its predecessors, and any licensees did not make, offer for sale, or sell products that practice(d) the '798 Patent during the relevant time period or were not required to mark during the relevant time period.

44.     As described above, Lenovo obtained knowledge of the '798 Patent and that certain products infringe the '798 Patent as of at least July 11, 2022, but has not ceased its infringing activities.  Lenovo's infringement of the '798 Patent has been and continues to be willful and deliberate.  Lenovo also has knowledge of the '798 Patent by way of this complaint and, to the extent they do not cease their infringing activities, their infringement is and continues to be willful and deliberate.

45.     As a result of Lenovo's direct and indirect infringement of the '798 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 9,232,265

46.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

47.     Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 9,232,265, titled "Method, apparatus and system for transitioning an audio/video device between a source mode and a sink mode."  The '265 Patent was duly and legally issued by the United States Patent and Trademark Office on January 5, 2016.  A true and correct copy of the '265 Patent is attached as Exhibit 10.

48.     On information and belief, Lenovo has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation Lenovo products (laptops, desktops, and monitors) that support USB-C Revision 1.0 or later, such as the

ThinkVision M14t USB-C Mobile Monitor, ThinkCentre M75s Gen 2 Small Form Factor Desktop, and the Legion 7 Gen 6 & 7 Gaming Laptop ("Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '265 Patent.  Identification of the Accused Products will be provided in Plaintiff's infringement contentions disclosed pursuant to the Court's scheduling order.  Plaintiff's identification of the Accused Products is not intended to accuse products where the infringement accusations are directed at products that are licensed by the license between Intel Corporation and WiLAN.

49.     The Accused Products satisfy all claim limitations of one or more claims of the '265 Patent.  A claim chart comparing exemplary independent claim 8 of the '265 Patent to representative Accused Products is attached as Exhibit 11.

50.     On June 30, 2022, WiLAN sent Lenovo a letter indicating that certain Lenovo products infringe at least claim 8 of the '265 Patent and proposed times to discuss a potential license from UCT to practice the '265 Patent.  Ex. 4.  On July 11, 2022, Lenovo's licensing department confirmed receipt of the June 30 letter and indicated that it "would be happy to engage in discussions" with WiLAN regarding a potential license. Ex. 5.  Thereafter, WiLAN and Lenovo exchanged various emails and held numerous calls to discuss the UCT patents (including substantive discussions regarding the alleged infringement and validity of the patents), including calls on July 26, 2022, November 1, 2022, November 8, 2022, November 29, 2022, December 20, 2022, January 24, 2023, January 31, 2023, February 14, 2023, and March 7, 2023.  After extensive discussions between the parties, Lenovo ultimately declined to take a license, or even hear UCT's offer for a license, on a call held on March 30, 2023.

51.     Lenovo knowingly and intentionally induces infringement of one or more claims of the '265 Patent in violation of 35 U.S.C. § 271(b).  As of at least July 11, 2022, Lenovo has

knowledge of the '265 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '265 Patent, Lenovo continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 11) to use the Accused Products in ways that directly infringe the '265 Patent. For example, Lenovo advertises that its products are compatible with USB-C. *See, e.g.*, https://www.lenovo.com/us/en/p/desktops/thinkcentre/m-series-sff/thinkcentre-m75s-gen-2/11tc1mdm75s?orgRef=https%253A%252F%252Fwww.google.com%252F#tech_specs (ThinkCenter M75s Gen 2 Small Form Factor Desktop – Product Specification); https://www.lenovo.com/us/en/p/laptops/legion-laptops/legion-7-series/legion-7-gen-6-(16-inch-amd)/len101g0011?orgRef=https%253A%252F%252Fwww.google.com%252F (Legion 7 Gen 6 Gaming Laptop – Product Specification). Lenovo also instructs its customers and end users on how to use the Accused Products in an infringing manner, including through the use of USB-C. *See, e.g.*, https://download.lenovo.com/pccbbs/thinkcentre_pdf/m75s_gen2_ug_en.pdf (ThinkCenter M75s Gen 2 Small Form Factor Desktop – User Manual); https://download.lenovo.com/pccbbs/pubs/legion_7_16_6/html_en/index.html#t=EN%2Fcover.html (Legion 7 Gen 6 Gaming Laptop – User Manual). Lenovo provides these instructions and materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts. Lenovo also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '265 Patent, thereby specifically intending for and inducing its customers to infringe the '265 Patent through the customers' normal and customary use of the Accused Products.

52.     Lenovo has also infringed, and continues to infringe, one or more claims of the '265 Patent by selling, offering for sale, or importing into the United States, the Accused Products,

knowing that the Accused Products constitute a material part of the inventions claimed in the '265 Patent, are especially made or adapted to infringe the '265 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use.  As of at least July 11, 2022, Lenovo has knowledge of the '265 Patent and the infringing nature of the Accused Products.  Lenovo has been, and currently is, contributorily infringing the '265 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f).  For example, the identified hardware and/or software components in Lenovo's laptops, desktops, and monitors that support USB-C Release 1.0 or later constitute a material part of the inventions claimed in the '265 Patent, are especially made or adapted to infringe the '265 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence in Exhibit 11.

53.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Lenovo has injured Plaintiff and is liable for infringement of the '265 Patent pursuant to 35 U.S.C. § 271.

54.     On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, its predecessors, and any licensees did not make, offer for sale, or sell products that practice(d) the '265 Patent during the relevant time period or were not required to mark during the relevant time period.

55.     As described above, Lenovo obtained knowledge of the '265 Patent and that certain products infringe the '265 Patent as of at least July 11, 2022, but has not ceased its infringing activities.  Lenovo's infringement of the '265 Patent has been and continues to be willful and deliberate.  Lenovo also has knowledge of the '265 Patent by way of this complaint and, to the extent they do not cease their infringing activities, their infringement is and continues to be willful and deliberate.

56.     As a result of Lenovo's direct and indirect infringement of the '265 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court.

**COUNT V**

**INFRINGEMENT OF U.S. PATENT NO. 8,680,712**

57.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

58.     Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 8,680,712, titled "Power delivery over digital interaction interface for video and audio (DiiVA)." The '712 Patent was duly and legally issued by the United States Patent and Trademark Office on March 25, 2014. A true and correct copy of the '712 Patent is attached as Exhibit 12.

59.     On information and belief, Lenovo has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation Lenovo products (laptops, desktops, monitors, docking stations, and power adapters) that support USB-C Version 1.0 and later, such as the ThinkVision M14t USB-C Mobile Monitor, ThinkVision P27pz-30 Mini-LED Monitor, ThinkCentre M75s Gen 2 Small Form Factor Desktop, and Legion 7 Gen 6 & 7 Gaming Laptop ("Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '712 Patent. Identification of the Accused Products will be provided in Plaintiff's infringement contentions disclosed pursuant to the Court's scheduling order. Plaintiff's identification of the Accused Products is not intended to accuse products where

the infringement accusations are directed at products that are licensed by the license between Intel Corporation and WiLAN.

60.     The Accused Products satisfy all claim limitations of one or more claims of the '712 Patent.   A claim chart comparing exemplary independent claim 1 of the '712 Patent to representative Accused Products is attached as Exhibit 13.

61.     On June 30, 2022, WiLAN sent Lenovo a letter indicating that certain Lenovo products infringe at least claim 1 of the '712 Patent and proposed times to discuss a potential license from UCT to practice the '712 Patent.   Ex. 4.   On July 11, 2022, Lenovo's licensing department confirmed receipt of the June 30 letter and indicated that it "would be happy to engage in discussions" with WiLAN regarding a potential license.   Ex. 5.   Thereafter, WiLAN and Lenovo exchanged various emails and held numerous calls to discuss the UCT patents (including substantive discussions regarding the alleged infringement and validity of the patents), including calls on July 26, 2022, November 1, 2022, November 8, 2022, November 29, 2022, December 20, 2022, January 24, 2023, January 31, 2023, February 14, 2023, and March 7, 2023.   After extensive discussions between the parties, Lenovo ultimately declined to take a license, or even hear UCT's offer for a license, on a call held on March 30, 2023.

62.     Lenovo also knowingly and intentionally induces infringement of one or more claims of the '712 Patent in violation of 35 U.S.C. § 271(b).   As of at least July 11, 2022, Lenovo has knowledge of the '712 Patent and the infringing nature of the Accused Products.   Despite this knowledge of the '712 Patent, Lenovo continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 13) to use the Accused Products in ways that directly infringe the '712 Patent.   For example, Lenovo advertises that its products are compatible with USB-C.   *See, e.g.,*

https://www.lenovo.com/us/en/p/desktops/thinkcentre/m-series-sff/thinkcentre-m75s-gen-2/11tc1mdm75s?orgRef=https%253A%252F%252Fwww.google.com%252F#tech_specs

(ThinkCenter M75s Gen 2 Small Form Factor Desktop – Product Specification); https://www.lenovo.com/us/en/p/laptops/legion-laptops/legion-7-series/legion-7-gen-6-(16-inch-amd)/len101g0011?orgRef=https%253A%252F%252Fwww.google.com%252F (Legion 7 Gen 6 Gaming Laptop – Product Specification).  Lenovo also instructs its customers and end users on how to use the Accused Products in an infringing manner, including through the use of USB-C.  *See*, *e.g.*,  https://download.lenovo.com/pccbbs/thinkcentre_pdf/m75s_gen2_ug_en.pdf (ThinkCenter M75s Gen 2 Small Form Factor Desktop – User Manual); https://download.lenovo.com/pccbbs/pubs/legion_7_16_6/html_en/index.html#t=EN%2Fcover.html (Legion 7 Gen 6 Gaming Laptop – User Manual).  Lenovo provides these instructions and materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts.  Lenovo also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '712 Patent, thereby specifically intending for and inducing its customers to infringe the '712 Patent through the customers' normal and customary use of the Accused Products.

63.    Lenovo has also infringed, and continues to infringe, one or more claims of the '712 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the '712 Patent, are especially made or adapted to infringe the '712 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use.  As of at least July 11, 2022, Lenovo has knowledge of the '712 Patent and the infringing nature of the Accused Products.  Lenovo has been, and currently is, contributorily infringing the '712 Patent in violation of 35 U.S.C. §§ 271(c)

**Appx35**

and/or (f). For example, the identified hardware and/or software components in Lenovo's laptops, desktops, monitors, docking stations, and power adapters that support USB-C Release 1.0 and later constitute a material part of the inventions claimed in the '712 Patent, are especially made or adapted to infringe the '712 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence in Exhibit 13.

64.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Lenovo has injured Plaintiff and is liable for infringement of the '712 Patent pursuant to 35 U.S.C. § 271.

65.     On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, its predecessors, and any licensees did not make, offer for sale, or sell products that practice(d) the '712 Patent during the relevant time period or were not required to mark during the relevant time period.

66.     As described above, Lenovo obtained knowledge of the '712 Patent and that certain products infringe the '712 Patent as of at least July 11, 2022, but has not ceased its infringing activities. Lenovo's infringement of the '712 Patent has been and continues to be willful and deliberate. Lenovo also has knowledge of the '712 Patent by way of this complaint and, to the extent they do not cease their infringing activities, their infringement is and continues to be willful and deliberate.

67.     As a result of Lenovo's direct and indirect infringement of the '712 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court.

## COUNT VI

## INFRINGEMENT OF U.S. PATENT NO. 7,856,520

68.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

69.     Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 7,856,520, titled "Control bus for connection of electronic devices."  The '520 Patent was duly and legally issued by the United States Patent and Trademark Office on December 21, 2010.  A true and correct copy of the '520 Patent is attached as Exhibit 14.

70.     On information and belief, Lenovo has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation Lenovo products (laptops, desktops, monitors, docking stations, and USB-C to DP/HDMI adapters) that support DisplayPort Alt Mode on USB Type-C Version 1.0 and later or HDMI Alt Mode for USB-C, such as the ThinkPad T16 Gen 2 (AMD) Laptop and Legion 7 Gen 7 Laptop ("Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '520 Patent.  Identification of the Accused Products will be provided in Plaintiff's infringement contentions disclosed pursuant to the Court's scheduling order.  Plaintiff's identification of the Accused Products is not intended to accuse products where the infringement accusations are directed at products that are licensed by the license between Intel Corporation and WiLAN.

71.     The Accused Products satisfy all claim limitations of one or more claims of the '520 Patent.  A claim chart comparing exemplary independent claim 12 of the '520 Patent to representative Accused Products is attached as Exhibit 15.

72.     Lenovo also knowingly and intentionally induces infringement of one or more claims of the '520 Patent in violation of 35 U.S.C. § 271(b).  As of at least the filing and service of this complaint, Lenovo has knowledge of the '520 Patent and the infringing nature of the Accused Products.  Despite this knowledge of the '520 Patent, Lenovo continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 15) to use the Accused Products in ways that directly infringe the '520 Patent.  For example, Lenovo advertises that its products provide DisplayPort Alternative Mode connections over USB-C.  *See, e.g.,* https://most.lenovo.com/api/v2/library/pdf/device2pager/Device_ThinkPad_T16_Gen_2_AMD?locale=en (ThinkPad T16 Gen 2 (AMD) – Product Specification).  Lenovo also instructs its customers and end users on how to use the Accused Products in an infringing manner, including through the use of DisplayPort Alternative Mode.  *See, e.g.,* https://download.lenovo.com/pccbbs/mobiles_pdf/t14_gen4_p14s_gen4_t16_gen2_p16s_gen2_linux_ug.pdf (ThinkPad T16 Gen 2 (AMD) – User Manual).  Lenovo provides these instructions and materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts.  Lenovo also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '520 Patent, thereby specifically intending for and inducing its customers to infringe the '520 Patent through the customers' normal and customary use of the Accused Products.

73.     Lenovo has also infringed, and continues to infringe, one or more claims of the '520 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the '520 Patent, are especially made or adapted to infringe the '520 Patent, and are not staple articles or

Appx38

commodities of commerce suitable for non-infringing use.  As of at least the filing and service of this complaint, Lenovo has knowledge of the '520 Patent and the infringing nature of the Accused Products.  Lenovo has been, and currently is, contributorily infringing the '520 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f).  For example, the identified hardware and/or software components in Lenovo's laptops, desktops, docking stations, USB-C to DP/HDMI adapters, and monitors that support DisplayPort Alt Mode on USB Type-C Version 1.0 and later constitute a material part of the inventions claimed in the '520 Patent, are especially made or adapted to infringe the '520 Patent and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence in Exhibit 15.

74.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Lenovo has injured Plaintiff and is liable for infringement of the '520 Patent pursuant to 35 U.S.C. § 271.

75.     On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, its predecessors, and any licensees did not make, offer for sale, or sell products that practice(d) the '520 Patent during the relevant time period or were not required to mark during the relevant time period.

76.     As a result of Lenovo's direct infringement of the '520 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court.

77.     As a result of Lenovo's indirect infringement of the '520 Patent, Plaintiff is entitled to monetary damages (present and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by

Lenovo, together with interest and costs as fixed by the Court, accruing as of the time Lenovo obtained knowledge of the '520 Patent.

## COUNT VII

### INFRINGEMENT OF U.S. PATENT NO. 7,921,231

78.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

79.     Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 7,921,231, titled "Discovery of electronic devices utilizing a control bus." The '231 Patent was duly and legally issued by the United States Patent and Trademark Office on April 5, 2011. A true and correct copy of the '231 Patent is attached as Exhibit 16.

80.     On information and belief, Lenovo has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation Lenovo products (laptops, desktops, and monitors) that support DisplayPort Alt Mode on USB Type-C Version 1.0 and later, such as the ThinkPad T16 Gen 2 (AMD) Laptop,  Legion 7 Gen 7 Laptop, and Qreator 27in Monitor ("Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '231 Patent. Identification of the Accused Products will be provided in Plaintiff's infringement contentions disclosed pursuant to the Court's scheduling order. Plaintiff's identification of the Accused Products is not intended to accuse products where the infringement accusations are directed at products that are licensed by the license between Intel Corporation and WiLAN.

28

**Appx40**

81.    The Accused Products satisfy all claim limitations of one or more claims of the '231 Patent.   A claim chart comparing exemplary independent claim 10 of the '231 Patent to representative Accused Products is attached as Exhibit 17.

82.    Lenovo also knowingly and intentionally induces infringement of one or more claims of the '231 Patent in violation of 35 U.S.C. § 271(b).   As of at least the filing and service of this complaint, Lenovo has knowledge of the '231 Patent and the infringing nature of the Accused Products.   Despite this knowledge of the '231 Patent, Lenovo continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 17) to use the Accused Products in ways that directly infringe the '231 Patent.   For example, Lenovo advertises that its products provide DisplayPort Alternative Mode connections over USB-C.   *See, e.g.*, https://most.lenovo.com/api/v2/library/pdf/device2pager/Device_ThinkPad_T16_Gen_2_AMD?locale=en (ThinkPad T16 Gen 2 (AMD) – Product Specification). Lenovo also instructs its customers and end users on how to use the Accused Products in an infringing manner, including through the use of DisplayPort Alternative Mode.   *See, e.g.*, https://download.lenovo.com/pccbbs/mobiles_pdf/t14_gen4_p14s_gen4_t16_gen2_p16s_gen2_linux_ug.pdf (ThinkPad T16 Gen 2 (AMD) – User Manual).   Lenovo provides these instructions and materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts.   Lenovo also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '231 Patent, thereby specifically intending for and inducing its customers to infringe the '231 Patent through the customers' normal and customary use of the Accused Products.

83.     Lenovo has also infringed, and continues to infringe, one or more claims of the '231 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the '231 Patent, are especially made or adapted to infringe the '231 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use.  As of at least the filing and service of this complaint, Lenovo has knowledge of the '231 Patent and the infringing nature of the Accused Products.  Lenovo has been, and currently is, contributorily infringing the '231 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f).   For example, the identified hardware and/or software components in Lenovo's laptops, desktops, and monitors that support DisplayPort Alt Mode on USB Type-C Version 1.0 and later constitute a material part of the inventions claimed in the '231 Patent, are especially made or adapted to infringe the '231 Patent and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence in Exhibit 17.

84.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Lenovo has injured Plaintiff and is liable for infringement of the '231 Patent pursuant to 35 U.S.C. § 271.

85.     On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, its predecessors, and any licensees did not make, offer for sale, or sell products that practice(d) the '231 Patent during the relevant time period or were not required to mark during the relevant time period.

86.     As a result of Lenovo's direct infringement of the '231 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Lenovo's

infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court.

87.    As a result of Lenovo's indirect infringement of the '231 Patent, Plaintiff is entitled to monetary damages (present and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court, accruing as of the time Lenovo obtained knowledge of the '231 Patent.

## COUNT VIII

## INFRINGEMENT OF U.S. PATENT NO. 9,852,103

88.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

89.    Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 9,852,103, titled "Bidirectional transmission of USB data using audio/video data channel."  The '103 Patent was duly and legally issued by the United States Patent and Trademark Office on December 26, 2017. A true and correct copy of the '103 Patent is attached as Exhibit 18.

90.    On information and belief, Lenovo has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation Lenovo products (laptops, desktops, monitors, and docking stations) that support USB 4 Version 1.0 and later, such as the ThinkPad T16 Gen 2 & 3 (AMD) Laptop**,** ThinkPad Z13**,** Lenovo Legion 7 Gen 7 AMD Laptop**,** and ThinkVision P27pz-30 Mini-LED Monitor ("Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '103 Patent. Identification of the Accused Products will be provided in Plaintiff's infringement contentions

31

disclosed pursuant to the Court's scheduling order.  Plaintiff's identification of the Accused Products is not intended to accuse products where the infringement accusations are directed at products that are licensed by the license between Intel Corporation and WiLAN.

91.     The Accused Products satisfy all claim limitations of one or more claims of the '103 Patent.  A claim chart comparing exemplary independent claim 21 of the '103 Patent to representative Accused Products is attached as Exhibit 19.

92.     Lenovo also knowingly and intentionally induces infringement of one or more claims of the '103 Patent in violation of 35 U.S.C. § 271(b).  As of at least the filing and service of this complaint, Lenovo has knowledge of the '103 Patent and the infringing nature of the Accused Products.  Despite this knowledge of the '103 Patent, Lenovo continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 19) to use the Accused Products in ways that directly infringe the '103 Patent.  For example, Lenovo advertises that its products are compatible with USB.                                                            *See,*                                                    *e.g.*, https://most.lenovo.com/api/v2/library/pdf/device2pager/Device_ThinkPad_T16_Gen_2_AMD?locale=en (ThinkPad T16 Gen 2 (AMD) – Product Specification).  Lenovo also instructs its customers and end users on how to use the Accused Products in an infringing manner, including through             the             use             of             USB.             *See,*             *e.g.*, https://download.lenovo.com/pccbbs/mobiles_pdf/t14_gen4_p14s_gen4_t16_gen2_p16s_gen2_linux_ug.pdf (ThinkPad T16 Gen 2 (AMD) – User Manual).  Lenovo provides these instructions and materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts.  Lenovo also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '103 Patent, thereby

specifically intending for and inducing its customers to infringe the '103 Patent through the customers' normal and customary use of the Accused Products.

93.     Lenovo has also infringed, and continues to infringe, one or more claims of the '103 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the '103 Patent, are especially made or adapted to infringe the '103 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use.  As of at least the filing and service of this complaint, Lenovo has knowledge of the '103 Patent and the infringing nature of the Accused Products.  Lenovo has been, and currently is, contributorily infringing the '103 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f).  For example, the identified hardware and/or software components in Lenovo's laptops, desktops, monitors, and docking stations that support USB 4 Version 1.0 and later constitute a material part of the inventions claimed in the '103 Patent, are especially made or adapted to infringe the '103 Patent and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence in Exhibit 19.

94.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Lenovo has injured Plaintiff and is liable for infringement of the '103 Patent pursuant to 35 U.S.C. § 271.

95.     On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, its predecessors, and any licensees did not make, offer for sale, or sell products that practice(d) the '103 Patent during the relevant time period or were not required to mark during the relevant time period.

96.     As a result of Lenovo's direct infringement of the '103 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Lenovo's

infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court.

97.     As a result of Lenovo's indirect infringement of the '103 Patent, Plaintiff is entitled to monetary damages (present and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court, accruing as of the time Lenovo obtained knowledge of the '103 Patent.

## COUNT IX

### DECLARATORY JUDGMENT THAT PLAINTIFF HAS NEGOTIATED IN GOOD FAITH TOWARD A LICENSE WITH LENOVO, HAS NOT VIOLATED THE VESA OR USB-IF IPR POLICIES, AND HAS NOT VIOLATED COMPETITION LAW

98.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

99.     Plaintiff's '905, '307, '798, '265, '712, '520, '231, and '103 Patents were previously assigned to Lattice Semiconductor Corporation ("Lattice"), which is a member of the Video Electronics Standards Association ("VESA") and the USB Implementers Forum, Inc. ("USB-IF"). Lattice was required to comply with the VESA and USB-IF IPR policies to the extent the '905, '307, '798, '265, '712, '520, '231, and '103 Patents contain Necessary Claims as defined in the VESA and USB-IF IPR policies.

100.    Plaintiff has fully performed its obligations under the VESA and USB-IF IPR policies, to the extent they apply to Plaintiff's '905, '307, '798, '265, '712, '520, '231, and '103 Patents, but Lenovo disagrees and has refused to license these patents, even refusing to entertain an offer from Plaintiff. Plaintiff has at all times been prepared to grant Lenovo a license to the '905, '307, '798, '265, '712, '520, '231, and '103 Patents. There is a dispute between Plaintiff

34

and Lenovo concerning whether Plaintiff has negotiated in good faith towards a license to Plaintiff's '905, '307, '798, '265, '712, '520, '231, and '103 Patents, and whether Plaintiff or its predecessors-in-interest have complied with the VESA and USB-IF IPR policies.  There is a case or controversy of sufficient immediacy, reality, and ripeness to warrant the issuance of declaratory judgment.

101.     Plaintiff requests a declaratory judgment that its negotiations toward a license with Lenovo were conducted in good faith, are not in violation of the VESA or USB-IF IPR policies, and are consistent with competition law requirements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

a.      A judgment in favor of Plaintiff that Lenovo has infringed, either literally and/or under the doctrine of equivalents, the '905, '307, '798, '265, '712, '520, '231, and '103 Patents;

b.      A judgment and order requiring Lenovo to pay Plaintiff its damages (past, present, and future), costs, expenses, and pre-judgment and post-judgment interest for Lenovo's infringement of the '905, '307, '798, '265, '712, '520, '231, and '103 Patents;

c.      A judgment that Lenovo's infringement of the '905, '307, '798, '265, and '712 Patents has been willful and order requiring Lenovo to pay treble damages for willful infringement;

d.      A judgment and order requiring Lenovo to pay Plaintiff compulsory ongoing licensing fees, as determined by the Court;

e.      A judgment and order requiring Lenovo to provide an accounting and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest and compensation for infringing products released after the filing of this case that are not colorably different from the Accused Products;

f.      A declaration that Plaintiff has negotiated in good faith with Lenovo towards a license for the '905, '307, '798, '265, '712, '520, '231, and '103 Patents, has not violated the VESA or USB-IF IPR policies, and has not violated competition law.

g.      A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Lenovo; and

h.      Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated:  September 28, 2023                    Respectfully submitted,

*/s/ Brett Cooper*

Brett E. Cooper (NY SBN 4011011)
bcooper@bc-lawgroup.com
Seth Hasenour (TX SBN 24059910)
shasenour@bc-lawgroup.com
Jonathan Yim (TX SBN 24066317)
jyim@bc-lawgroup.com
Drew B. Hollander (NY SBN 5378096)
dhollander@bc-lawgroup.com

BC LAW GROUP, P.C.
200 Madison Avenue, 24th Floor
New York, NY 10016
Phone: 212-951-0100

***Attorneys for Plaintiff Universal Connectivity Technologies Inc.***

# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |
|---|---|
| UNIVERSAL CONNECTIVITY TECHNOLOGIES INC., | |
| Plaintiff, | Case No. 2:23-cv-00449-JRG |
| v. | |
| LENOVO GROUP LIMITED, | |
| Defendant. | |

## DECLARATION OF ADRIAN CHIM

I, Adrian Chim, declare as follows:

1.      I am an employee of Lenovo Hong Kong Services Limited and my title is Director, Group Financial Reporting and Accounting Policy.  I have held that position since June 2015.  I submit this declaration based on my knowledge of the facts set forth herein and my investigation of the relevant corporate records and, if called upon as a witness, I could and would competently testify as to the truth of each statement below.

2.      LGL is a company incorporated in Hong Kong with its principal place of business in Hong Kong at the address Lincoln House, 23rd Floor, Taikoo Place, 979 King's Road, Quarry Bay, Hong Kong.

3.      LGL is and has been a holding company, which serves as a direct and indirect parent company for its subsidiaries.  As a holding company, LGL does not itself manufacture, sell, offer for sale, export, import, or otherwise distribute any Lenovo-branded products.  Nor has LGL itself distributed any Lenovo-branded products through established distribution channels.

i

4.    LGL itself does not operate in the United States, make products for the United States market, or offer services to customers in the United States. LGL is not authorized, registered, or licensed to do business in Texas or anywhere else in the United States and has no place of business, sales, or presence in Texas or anywhere else in the United States. LGL has no bank accounts, real property, personal property, telephone listing, or any other assets in Texas or anywhere else in the United States. LGL does not store or maintain documents in Texas. And LGL has no employees in Texas or anywhere else in the United States. Nor has LGL ever engaged in end-user support in Texas.

5.    LGL does not itself engage in any sales, advertising, or marketing efforts targeting Texas or anywhere else in the United States. LGL does not itself sell or offer to sell any Lenovo-branded products or services on the Lenovo.com website.

6.    Lenovo (United States) Inc. ("Lenovo US") is the entity responsible for selling Lenovo-branded products in the United States. Lenovo US purchases those products from another LGL subsidiary, Lenovo PC HK Limited, and then imports them into the United States for sale. Lenovo US is a Delaware corporation and maintains its principal place of business in Morrisville, North Carolina. Lenovo PC HK Limited is a Chinese company having its principal place of business in Hong Kong.

7.    LGL is not involved in the daily business activities and decisions of Lenovo US pertaining to the use, sale, offer for sale, marketing, distribution, or importation of Lenovo-branded products in the United States, and Lenovo US does not need the approval of LGL with respect to those business activities. Furthermore, LGL has not entered into any distribution, sales, or marketing agreements with Lenovo US or any other United States affiliate related to Lenovo-branded products. LGL is also not involved in any manufacturing, sales, advertising, or marketing activities for Lenovo US.

8.    Similarly, Lenovo US does not need the approval of Lenovo PC HK with

- 2 -

**Appx50**

respect to the daily business activities and decisions pertaining to the use, sale, offer for sale, marketing, distribution, or importation of Lenovo-branded products in the United States.

9.      LGL did not and does not conduct any research and development with respect to Lenovo-branded products.  Nor has LGL licensed any such products to Lenovo US.

10.      LGL also does not pay or reimburse for any expenses incurred by Lenovo US. LGL does not pay any wages or salaries to employees of Lenovo US.

11.      There are no common officers or directors between LGL on the one hand and Lenovo US on the other.  The officers and directors of LGL are listed in the document attached to this declaration as Exhibit A.  The officers and directors of Lenovo US are listed in the document attached to this declaration as Exhibit B.  There are also no common officers or directors between Lenovo PC HK Limited on the one hand and Lenovo US on the other.  The officers and directors of Lenovo PC HK Limited are listed in the document attached to this declaration as Exhibit C.

12.      LGL files separate tax returns from Lenovo US.  LGL files its tax returns in Hong Kong.  It is my understanding that Lenovo US files its tax returns in the United States.

13.      LGL has no role in any of the property owned by Lenovo US in the United States.  LGL employees do not work out of or utilize any of Lenovo US's properties in the United States.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Hong Kong on this 16th day of May, 2024.

_____

                                        Adrian Chim

# EXHIBIT A

# Current Appointments

| Job Title | Position | Appointed | Name | Appt.Grp. | Status | Reminder |
|---|---|---|---|---|---|---|
| | Director | 30/01/2013 | BROWN, William Tudor | | | |
| | Director | 17/05/2005 | GRABE, William Otto | | | |
| | Director | 18/09/2015 | ORR, Gordon Robert Halyburton | | | |
| | Director | 18/08/2023 | THORNTON, John Lawson | | | |
| | Director | 20/06/2022 | WANG, Hsiueh Hong Cher | | | |
| | Director | 22/02/2019 | WOO, Chin Wan Raymond | | | |
| | Director | 20/06/2022 | XUE, Lan | | | |
| | Director | 15/05/2020 | YANG, Lan | | | |
| | Director | 16/12/1997 | YANG, Yuanqing | | | |
| | Director | 03/11/2011 | ZHAO, John Huan | | | |
| | Director | 30/04/2005 | ZHU, Linan | | | |
| | Secretary | 01/12/2022 | Lam, Ngan Ling | | | |

# EXHIBIT B

# Current Appointments

| Job Title | Position | Appointed | Name | Appt.Grp. | Status | Reminder |
|---|---|---|---|---|---|---|
| | Chairman | 17/12/2021 | Cranor, Kurt | | | |
| | Director | 23/06/2011 | Cranor, Kurt | | | |
| | Director | 29/12/2023 | Johnson, Kim | | | |
| | Director | 31/05/2007 | Stanley, John P. | | | |
| | Executive Vice President | 20/06/2019 | Stanley, John P. | | | |
| | Controller | 17/12/2021 | Cranor, Kurt | | | |
| | Secretary | 20/06/2019 | Stanley, John P. | | | |
| | President | 01/12/2013 | Cranor, Kurt | | | |
| | Treasurer | 01/12/2013 | Cranor, Kurt | | | |

# EXHIBIT C

# Current Appointments

| Job Title | Position | Appointed | Name | Appt.Grp. | Status | Reminder |
|---|---|---|---|---|---|---|
| | Director | 31/01/2010 | Leung, Sze Leung Patrick | | | |
| | Director | 31/03/2024 | LO, Shing Cheuk | | | |
| | Director | 23/10/2007 | Wong, Wai Kwong | | | |
| | Director | 06/09/2007 | Wong, Wai Ming | | | |
| | Secretary | 01/12/2022 | Lam, Ngan Ling | | | |

# **<u>EXHIBIT 1</u>**

Case 2:23-cv-00449-JRG    Document 28-1    Filed 06/14/24    Page 2 of 4 PageID #: 819

 # 管理体系认证证书

证书编号：01124EN30007R2L
OID 编号：1.2.156.1.2.01124EN30007R2L

## 兹 证 明

## 联想(北京)有限公司

（社会信用代码）91110108700000458B）

（北京市海淀区上地西路 6 号 2 幢 2 层 201-H2-6，100085）

### 能源管理体系符合标准：

GB/T 23331-2020/ISO 50001:2018《能源管理体系 要求》
RB/T 101-2013《能源管理体系 电子信息企业认证要求》

### 本 证 书 覆 盖 下 述 范 围：

联想（北京）有限公司范围内与微型计算机、便携式计算机、数字移动电话机
平板电脑/无线数据终端、智能终端设备、PC 周边设备系列产品的设计、开发
生产、运营管理及售后服务相关的能源管理活动
认证覆盖以下场所：
场所 1：联想（北京）有限公司 北京市海淀区西北旺东路 10 号院 1、2 号楼
业务活动：微型计算机、便携式计算机、数字移动电话机、平板电脑/无线数据终端
智能终端设备、PC 周边设备系列产品的设计、开发、运营管理及售后服务
场所 2：摩托罗拉（武汉）移动技术通信有限公司 湖北省武汉市东湖新技术开发区
高新四路 19 号
业务活动：数字移动电话机、平板电脑/无线数据终端、智能终端设备的生产
场所 3：联想信息产品（深圳）有限公司 广东省深圳市光明区新湖街道楼村社区
荔都路联想创新科技园 1 号厂房 1、2、3、4、6 层和 3 号楼 B1 层
业务活动：微型计算机、便携式计算机、PC 周边设备系列产品的生产
场所 4：联想创新科技（天津）有限公司 天津市滨海新区空港经济区经三路 9 号
8 号楼和 9 号楼 1 层
业务活动：便携式计算机的生产

（本证书有效性依据发证机构的定期监督获得保持，证书有效性信息请登录 www.cc.cesi.cn 进行查询）
（本证书信息可在国家认证认可监督管理委员会官方网站 www.cnca.gov.cn 上查询）
注：认证注册范围不包括未获得有效的国家规定的相关行政许可，资质许可的产品服务范围

总 经 理

发证日期：2024 年 3 月 20 日

有效期至：2027 年 3 月 21 日

北京赛西认证有限责任公司

 CNAS

中国认可
管理体系
MANAGEMENT SYSTEM
CNAS C011-M

地址：北京市东城区安定门东大街 1 号    客服电话：400-071-9000    网址：www.cc.cesi.cn

**Appx60**



# CERTIFICATE OF MANAGEMENT SYSTEM CERTIFICATION

Certificate No: 01124EN30007R2L
OID No: 1.2.156.1.2.01124EN30007R2L

**This is to certify that the Energy Management System of**

**LENOVO (BEIJING) LIMITED**

(Certificate of Social Credit Code : 91110108700000458B)

(No. 2 Building, 201-H2-6, No. 6 Shangdi West Road, Haidian District, Beijing, China, 100085)

**has complied with the requirements of**

**GB/T 23331-2020/ISO 50001:2018**

**Energy management systems-Requirements**

**RB/T 101-2013**

**This certificate is valid for the following scope:**

**THE ENERGY MANAGEMENT ACTIVITIES RELATED TO DESIGN**

**DEVELOPMENT, MANUFACTURING, OPERATION MANAGEMENT**

**AND AFTER-SALES SERVICE OF COMPUTER PRODUCTS AND DEVICES**

**MOBILE DEVICES, TABLETS, SMART DEVICES AND PC OPTIONS IN**

**LENOVO (BEIJING) LIMITED.**

**THE ENERGY MANAGEMENT SYSTEM APPLIED TO**

**SEE THE MANAGEMENT SYSTEMS CERTIFICATE APPENDIX:**

THE VALIDITY OF THIS CERTIFICATE DEPENDS ON THE CONSEQUENCE OF
THE ANNUALLY SURVEILLANCE EXECUTED BY THE CERTIFICATION BODY
PLEASE ACCESS www.cc.cesi.cn OR www.cnca.gov.cn FOR CHECKING VALIDITY OF THE CERTIFICATE
Note: The scope of product services without the related administrative permits and qualifications is
not included in the scope of certification registration.

**General Manager**

Issue Date:2024-03-20

Valid Until:2027-03-21

**CESI Certification Co., Ltd.**



中国认可
管理体系
MANAGEMENT SYSTEM
CNAS C011-M



Add:  No.1Andingmen Dongdajie Dongchengqu,Beijing,China      Tel:  400-071-9000      Http://www.cc.cesi.cn

**Appx61**



# MANAGEMENT SYSTEMS CERTIFICATE APPENDIX

Certificate No: **01124EN30007R2L**
OID No: **1.2.156.1.2. 01124EN30007R2L**

Issue Date: 2024-03-20

Valid Until: 2027-03-21

**This certificate is valid for the following scope:**

**THE ENERGY MANAGEMENT ACTIVITIES RELATED TO DESIGN, DEVELOPMENT MANUFACTURING, OPERATION MANAGEMENT AND AFTER-SALES SERVICE OF COMPUTER PRODUCTS AND DEVICES, MOBILE DEVICES, TABLETS, SMART DEVICES AND PC OPTIONS IN LENOVO (BEIJING) LIMITED.**
**THE ENERGY MANAGEMENT SYSTEM APPLIED TO THE FOLLOWING LOCATIONS:**
**1. LENOVO (BEIJING) LIMITED**
**BUILDING NO.1 & NO.2, NO.10 XIBEIWANG EAST ROAD, HAIDIAN DISTRICT BEIJING, CHINA**
**SCOPE: DESIGN, DEVELOPMENT, OPERATION MANAGEMENT AND AFTER-SALES SERVICE OF COMPUTER PRODUCTS AND DEVICES, MOBILE DEVICES, TABLETS SMART DEVICES AND PC OPTIONS**
**2. MOTOROLA (WUHAN) MOBILITY TECHNOLOGIES COMMUNICATION CO., LTD. NO. 19 GAOXIN 4TH ROAD, EAST LAKE HIGH-TECH ZONE, WUHAN, HUBEI, CHINA SCOPE: MANUFACTURING OF MOBILE DEVICES, TABLETS AND SMART DEVICES**
**3. LENOVO INFORMATION PRODUCTS (SHENZHEN) CO., LTD.**
**1F, 2F, 3F, 4F, 6F NO.1 PLANT & B1 BUILDING NO.3, LENOVO INNOVATION PARK LIDU ROAD, LOUCUN COMMUNITY, XINHU STREET, GUANGMING DISTRICT SHENZHEN, GUANGDONG, CHINA**
**SCOPE: MANUFACTURING OF COMPUTER PRODUCTS AND DEVICES AND PC OPTIONS**
**4. LENOVO INNOVATION TECHNOLOGY (TIANJIN) LIMITED**
**BUILDING 8 & 1F BUILDING 9, NO. 9 JINGSAN ROAD, AIRPORT ECONOMIC AREA, BINHAI NEW AREA,TIANJIN, CHINA**
**SCOPE: MANUFACTURING OF COMPUTER PRODUCTS AND DEVICES**

# <u>EXHIBIT 2</u>

6/14/24, 1... Case 2:23-cv-00449-JRC   Document 28-2   Filed 06/14/24   Page 2 of 6 Page ID #: 823

Lenovo (United States) Inc. Company Profile | Mountlake Terrace, WA | Competitors, Financials & Contacts – Dun & Bradstreet



# D&B Business Directory

# Lenovo (United States) Inc.

## Looking for a credit report on Lenovo (United States) Inc.?

Our Business Information Report Snapshot is a collection of business credit scores and ratings that help you gauge the financial health of your customers, suppliers, and business partners

- Access the company's payment history and background information on key employees
- See the company's D&B PAYDEX® Score and five other Dun & Bradstreet scores and ratings

*Price valid for U.S. customers purchasing Business Information Report Snapshot on U.S. companies*

Just $139.99 *     **Buy Now**

Privacy • Terms

View More Details >





**Appx64**

6/14/24, 1:04 PM    Lenovo (United States) Inc Company Profile | Morrisville, NC, United States | Competitors, Financials & Contacts - Dun & Bradstreet

# Overview

---

**Doing Business As:** Lenovo International

**Company Description:** 🔒

**Key Principal:** Yang Yuanqing

**Industry:** Computer and Peripheral Equipment Manufacturing , Computer Systems Design and Related Services , Computer and Electronic Product Manufacturing , Manufacturing , Electronic computers
Computer software development and applications

**See other industries within the  Manufacturing sector:** Aerospace Product and Parts Manufacturing , Agriculture, Construction, and Mining Machinery Manufacturing , Alumina and Aluminum Production and Processing , Animal Food Manufacturing , Animal Slaughtering and Processing , Apparel Accessories and Other Apparel Manufacturing , Apparel Knitting Mills , Architectural and Structural Metals Manufacturing

**Popular Search:**



🏢 Computer and Peripheral Equipment Manufacturing    🏢 Computer Systems Design and Related Services
🏢 Computer and Electronic Product Manufacturing    🏢 Manufacturing

🖨

🌐 **Address:** 8001 Development Dr Morrisville, NC, 27560-7416 United States

📞 **Phone:** 🔒

🔍 **Website:** www.lenovo.com

👥 **Employees (this site):** 🔒    ⓘ Actual
**Employees (all sites):** 🔒    ⓘ Actual

📈 **Revenue:** 🔒    ⓘ Modelled



🏢 **Year Started:** 🔒  |  **Incorporated:** 🔒



**Appx65**

6/14/24, 1:06 PM    Lenovo (United States) Inc. Company Profile | Morrisville, NC, United States | Competitors, Financials & Contacts - Dun & Bradstreet



**ESG ranking:** 🔒 ⓘ

**ESG industry average:** 🔒 ⓘ

[What is D&B's ESG Ranking?](#)

Is this your business? [Contact us](#) to understand how D&B calculated your company's specific ESG Ranking, provide new or updated information to ensure your company's ESG Ranking remains accurate and up to date, or dispute your current ranking.

[Unlock full sales materials and reports](#)

# Contacts

Get in Touch with 5 Principals* and 2,841 Contacts

| | | |
|---|---|---|
| **Yang Yuanqing**<br>Chief Executive Officer | **Contact 2**<br>🔒 | **Contact 3**<br>🔒 |
| **Contact 4**<br>🔒 | | |



Appx66

6/14/24, 1:... Case 2:23-CV-00440-JRG ... Lenovo (United States) ... Document 28-2 ... Company Profile | Filed 06/14/24 ... Competitors, Page 5 of 6 PageID #: 826 & Dun & Bradstreet



# Financial Data

Dun & Bradstreet collects private company financials for more than 23 million companies worldwide. Find out more.

 🔓 Get a D&B credit report on this company  ›



🔒 Unlock more company details by getting detailed credit reports on other companies or your own.

**Buy Credit Reports**

# Similar Companies Nearby



Appx67

6/14/24, 10:43 AM     Case 2:23-CV-00440-JRC   Document 28-2   Filed 06/14/24   Page 6 of 6 PageID #: 327
Lenovo (United States) Inc. Company Profile | North Hills, NY, Competitors, Financials & Contacts - Dun & Bradstreet



## Unlock more company and contact details with your D&B Hoovers Free Trial

Find and prioritize your best prospects, boost your sales productivity, and win more deals with D&B Hoovers.

**Get a D&B Hoovers Free Trial**

# Corporate Family



## Unlock more company and contact details with your D&B Hoovers Free Trial

Find and prioritize your best prospects, boost your sales productivity, and win more deals with D&B Hoovers.

**Get a D&B Hoovers Free Trial**

If Lenovo (United States) Inc. is your company and you would like to remove it from the D&B Business Directory, please contact us.



Appx68

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| UNIVERSAL CONNECTIVITY TECHNOLOGIES INC., | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. 2:23-CV-00449-JRG |
| LENOVO GROUP LIMITED, | § § § | |
| *Defendant.* | § § § | |

**ORDER**

Before the Court is the Motion to Compel Discovery from Defendant Lenovo Group Limited (the "Motion to Compel") filed by Plaintiff Universal Connectivity Technologies Inc. ("UCT"). (Dkt. No. 34.) Having considered the Motion to Compel and Defendant Lenovo Group Limited's ("LGL") response thereto (Dkt. No. 39), the Court finds that the Motion to Compel should be **GRANTED**. Plaintiff's Unopposed Motion for Oral Hearing regarding the Motion to Compel (Dkt. No. 40) is **DENIED AS MOOT**.

**I.    BACKGROUND**

On May 17, 2024, LGL filed a Motion to Dismiss for lack of personal jurisdiction (the "Motion to Dismiss"). (Dkt. No. 18.) In the Motion to Dismiss, LGL alleges that it is a holding company that does not make, use, offer for sale, or sell any products in the United States. (*Id.* at 7-9.) UCT countered that LGL is subject to the Court's personal jurisdiction under the stream of commerce theory based on LGL's wholly owned U.S. subsidiaries. (Dkt. No. 23 at 5-6.)

On August 6, 2024, UCT filed the Motion to Compel, asserting that LGL refuses to produce documents and information because the requested documents and information are not in LGL's possession, custody, or control. (Dkt. No. 34 at 1.) UCT alleges that LGL maintains that the

requested information is in the possession of its subsidiaries, specifically Lenovo (United States) Inc. ("Lenovo US"). (*Id.* at 3.) UCT asserts that LGL told UCT it must subpoena Lenovo US for the requested documents and information. (*Id.* at 3-4.) UCT argues that LGL should provide documents and information from its wholly owned subsidiaries because LGL has access to the requested documents and information based on LGL's "100% ownership interest in Lenovo US." (*Id.* at 6.)

In response, LGL asserts that it is not in possession, custody, or control of the documents and information UCT requests. (Dkt. No. 39 at 5-7.) LGL contends that the documents and information sought are in the possession of Lenovo US and that UCT must subpoena Lenovo US. (*Id.* at 6-7.) LGL claims that it requested the information from Lenovo US but Lenovo US declined to provide the requested documents and information. (*Id.* at 2.) LGL contends that it has provided everything in its possession, custody, and control and that "it is no surprise to UCT that much of this information is in the possession of LGL's U.S.-based subsidiaries and those subsidiaries' third-party suppliers." (*Id.*)

## II. DISCUSSION

LGL's pending Motion to Dismiss does not excuse LGL from complying with its discovery obligations. Local Rule CV-26(a) ("[A] party is not excused from responding to discovery because there are pending motions to dismiss . . . .). Further, the Court finds that LGL is in control of documents and information held by its wholly owned subsidiaries, including Lenovo US. A parent corporation generally has control over documents and information in its subsidiaries' possession, custody, or control. *E.g.*, *Polaris Innovations Ltd. v. Broadcom, Inc.*, No. 2:22-CV-00347-JRG, 2023 WL 2542598, at *2 (E.D. Tex. Mar. 15, 2023) (compelling the production of documents and information in the defendant's and any of its subsidiaries' possession, custody, or control); *ACQIS LLC v. ASUSTeK Comput. Inc.*, No. 6:20-cv-00966, Dkt. No. 75 (W.D. Tex. Apr. 12, 2022)

(compelling the defendant to "produce all non-privileged, responsive documents in the possession of ACI (and other subsidiaries with relevant information, if any)" and furnish information from its subsidiaries in answering the plaintiff's interrogatories); *ACQIS LLC v. Lenovo Grp. Ltd. et al.*, No. 6:20-cv-00967, Dkt. No. 166 (W.D. Tex. May 26, 2022) (compelling the defendants to produce information from non-party Lenovo (United States)); *LaserDynamics, Inc. v. Asus Comput. Int'l et al.*, 2009 WL 153191, \*3 (E.D. Tex. Jan. 21, 2009) ("To the extent that such information resides with an Asustek subsidiary or affiliated company, the court orders it to be produced, and finds that such information is within the control of Asustek."); *Japan Display Inc. f/k/a Hitachi Elec. Devices (USA), Inc. et al. v. Tianma Microelectronics Co., Ltd.*, No. 2:20-cv-00283-JRG, Dkt. No. 95 at 2 (E.D. Tex. July 13, 2021) (compelling the production of documents in the possession of one of the defendant's subsidiaries); *see also Texas v. Ysleta del Sur Pueblo*, 2018 WL 2348669, at \*3 (W.D. Tex. May 23, 2018) (compelling the production of documents in the possession, custody, or control of its subsidiary). LGL must provide the requested documents and information that is in LGL's and/or its wholly owned subsidiaries possession, custody, or control. This includes making the required document production and providing substantive and meaningful responses to UCT's interrogatories. LGL's claim that it must subpoena documents from its own wholly owned subsidiary is unpersuasive--to say the least.

## III.    CONCLUSION

For the reasons stated herein, the Court **GRANTS** UCT's Motion to Compel (Dkt. No. 34). Accordingly, LGL shall produce all non-privileged documents responsive to the Court's Local Rules and the Docket Control Order in LGL's and/or any of its subsidiaries' possession, custody, or control within ten (10) days of this Order. Within the next ten (10) days, LGL shall also respond to UCT's interrogatory requests based on information within the possession, custody, or control of LGL and/or any of its subsidiaries.

**Appx71**

Considering the above ruling, Plaintiff's Unopposed Motion for Oral Hearing regarding the Motion to Compel (Dkt. No. 40) is **DENIED AS MOOT**.

**So ORDERED and SIGNED this 1st day of October, 2024.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

4

**Appx72**